ELIZABETH S. NEWTON, Respondent, *v.* OLIVER PORTER et al., Appellants.

The owner of negotiable securities, stolen and afterwards sold by the thief, may follow and claim the proceeds in the hands of the felonious taker or of his assignee with notice; and this right continues and attaches to any securities or property in which the proceeds are invested so long as they can be traced and identified, and the rights of a *bona fide* purchaser do not intervene. The law will raise a trust *in invitum* out of the transaction in order that the substituted property may be subjected to the purposes of indemnity and recompense.

An objection to evidence, taken under a commission, that the commission was not executed by the person intended, should be raised by motion to suppress where the party has an opportunity so to do; if not so raised it will be deemed to have been waived; it cannot be raised, upon the trial, where the party had knowledge of the fact a sufficient time before the trial to enable him to make the motion.

(Argued December 21, 1877; decided March 27, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term.

The nature of the action and the facts are set forth sufficiently in the opinion.

*M. Goodrich*, for the appellants. The defendant's failure to move to suppress the deposition taken under the commission was only a waiver of irregularities in taking it. (*Brown* v. *Southworth*, 9 Paige, 350; *Hays* v. *Phelps*, 1 Sandf. Sup. Ct., 64; *Ford* v. *Williams*, 24 N. Y., 359; *Rust* v. *Eckler*, 14 id., 488; *Williams* v. *Eldridge*, 1 Hill, 249.) To hold defendants liable as trustees, it was necessary to show that they had notice of the trust when they took their title. (1 Perry on Trusts, § 218; Hill on Trustees, 744; Tiff. & Bull, 201; *Hoyt* v. *Sheldon*, 3 Bosw., 268; *Williamson* v. *Brown*, 15 N. Y., 354, 363.) Considering the property as the avails of the conversion of plaintiff's bonds by the tortious act of the Warners & Lusk, the law recognizes no trust

in plaintiff's favor as owner in such avails which she could enforce against defendants. (*Tiff. & Bull*, 34; *Ensley* v. *Ballantine*, 4 Humph., 233; *Campbell* v. *Drake*, 4 Ired. Eq., 94; *Thompson* v. *Perkins*, 3 Mason, 232; *Pascoag Bk.* v. *Hunt*, 3 Edw. Ch., 583; *Gettey* v *Campbell*, 2 Robt., 664; *Hawthorne* v. *Brown*, 2 Sneed, 462.)

*M. M. Waters*, for the respondent. The intervention of a felony will not prevent the owner of property from pursuing it in the hands of any one deriving title from the felon, with notice in case of negotiable paper, and with or without notice in case of any other personal chattels. (2 R. S., 292, § 2; 3 Banks [3d ed.], 589, § 2; part 3, chap. 4, title 1, § 2; Code, § 7; *Gordon* v. *Hostetter*, 37 N. Y., 99; *Carow.* v. *Hoffman*, 22 Wend., 285, 294, 295; *Williams* v. *Merle*, 11 id., 80; *Prescott* v. *De Forest*, 16 J. R., 160; 2 Kent's Com., 320–3.) It was not necessary to bring this case within the doctrine of implied trusts. (*Pascoag Bank* v. *Hunt*, 3 Ed. Ch., 583; *Campbell* v. *Drake*, 4 Ired. Ch., 94; *Emley Balentine*, 4 Humph., 233; *Thompson* v. *Perkins*, 3 Mason, 232; *Bank of America* v. *Pollok*, 4 Edw. Ch., 215.) A thief cannot, by changing stolen property into a different species, acquire title to it in its changed state. (*Silsbury* v. *McCoon*, 3 Com., 379; 11 Alb. L. J., No. 21, p. 330; 52 N. Y., 1; 4 Edw. Ch., 215.) Where property has been wrongfully misapplied, or a trust fund wrongfully converted into another species of property, if its identity can be traced it will be held in its new form liable to the rights of the original owner. (2 Story's Eq., 1258, and note 2; id., 1232; id., 1255, 1262; 24 Wend., 518.) An innocent purchaser is not protected if he takes title from a trespasser or wrong-doer. (60 Barb., 55; 14 Wend., 31–6; 20 id., 275; 22 id., 285, 294, 295, 318; 11 id., 80; 13 id., 570; 48 How., 338; 40 Barb., 397; 39 N. Y., 441; 1 Swee., 449; 6 Wend., 603; 20 id., 69; 3 Com., 509; 23 Wend., 462; 5 Bosw., 121, 130; 4 Den., 323; 9 Barb., 230; 2 Seld., 374; *Coddington* v. *Bay*, 20 J. R., 636; *Stalker* v. *McDonald*, 6 Hill,

93, 99; 24 Wend., 405; 52 N. Y., 1; 37 id., 99; 14 id., 329; 3 Am. R., 366; 10 Ves., 511, 517; 5 Lans., 416; 45 N. Y., 387; 3 Mason, 232; Story's Eq., §§ 1232, 1260; 2 Kent's Com., 324; Perry on Trusts, § 166; 55 N. Y., 41; 39 id., 441, 446; 5 Bosw., 130; Ambl., 409; 3 M. & S., 562; 2 Grat., 544.)   Defendants should have moved to suppress the commission.   (61 N. Y., 564; 7 Hun, 458; 2 Abb., 271; 51 Barb., 106; 36 id., 649; 30 N. Y., 330.)

Andrews, J.  This is an equitable action brought to establish the right of the plaintiff to certain securities, the proceeds of stolen bonds, and to compel the defendants to account therefor.

In March, 1869, the plaintiff was the owner of $13,000 of government bonds, and of a railroad bond for $1,000, negotiable by delivery, which, on the 12th of March, 1869, were stolen from her, and soon afterwards $11,500 of the bonds were sold by the thief and his confederates, and the proceeds divided between them.  William Warner loaned a part of his share in separate loans and took the promissory notes of the borrower therefor.  George Warner invested $2,000 of his share in the purchase of a bond and mortgage, which was assigned to his wife Cordelia without consideration.

In January, 1870, William Warner, George Warner, Cornelia Warner and one Lusk were arrested upon the charge of stealing the bonds, or as accessories to the larceny, and were severally indicted in the county of Cortland.  The Warners employed the defendants, who are attorneys, to defend them in the criminal proceedings,· and in any civil suits which might be instituted against them in respect to the bonds, and to secure them for their services and expenses, and for any liabilities they might incur in their behalf, William Warner transferred to the defendants Miner and Warren promissory notes taken on loans made by him out of the proceeds of the stolen bonds, amounting to $2,250 or thereabouts, and Cordelia Warner, for the same purpose,

assigned to the defendant Porter the bond and mortgage above mentioned.

The learned judge at Special Term found that the defendants had notice at the time they received the transfer of the securities, that they were the avails and proceeds of the stolen bonds, and directed judgment against them for the value of the securities, it appearing on the trial that they had collected or disposed of them and received the proceeds.

. The doctrine upon which the judgment in this case proceeded, viz. : that the owner of negotiable securities stolen and afterwards sold by the thief may pursue the proceeds of the sale in the hands of the felonious taker or his assignee with notice, through whatever changes the proceeds may have gone, so long as the proceeds or the substitute therefor can be distinguished and identified, and have the proceeds or the property in which they were invested subjected, by the aid of a court of equity, to a lien and trust in his favor for the purposes of recompense and restitution, is founded upon the plainest principles of justice and morality, and is consistent with the rule in analogous cases acted upon in courts of law and equity. It is a general principle of the law of personal property that the title of the owner cannot be divested without his consent. The purchaser from a thief, however honest and *bona fide* the purchase may have been, cannot hold the stolen chattel against the true proprietor, but the latter may follow and reclaim it wherever or in whosoever hands it may be found. The right of pursuit and reclamation only ceases when its identity is lost and further pursuit is hopeless; but the law still protects the interest of the true owner by giving him an action as for the conversion of the chattel against any one who has interfered with his dominion over it, although such interference may have been innocent in intention and under a claim of right, and in reliance upon the title of the felonious taker. The extent to which the common law goes to protect the title of the true owner has a striking illustration in those cases in which it is held that where a willful trespasser converts a chattel into a

different species, as for example, timber into shingles, wood
into coal, or corn into whiskey, the product in its improved
and changed condition belongs to the owner of the original
material. (*Silsbury* v. *McCoon*, 3 N. Y., 380, and cases
cited.) The rule that a thief cannot convey a good title to
stolen property has an exception in case of money or negoti-
able securities transferable by delivery, which have been put
into circulation and have come to the hands of *bona fide*
holders. The right of the owner to pursue and reclaim the
money and securities there ends, and the holder is protected
in his title. The plaintiff was in this position. The bonds,
with the exception stated, had, as the evidence tends to show,
been sold to *bona fide* purchasers, and she was precluded from
following and reclaiming them.

The right of the plaintiff in equity to have the notes and
mortgage while they remained in the possession of the felons
or of their assignees with notice, subjected to a lien and trust
in her favor, and to compel their transfer to her as the equit-
able owner, does not, we think, admit of serious doubt. The
plaintiff, by the sale of the bonds to *bona fide* purchasers,
lost her title to the securities. She could not further follow
them. She could maintain an action as for a conversion of
the property against the felons. But this remedy in this
case would be fruitless, as they are wholly insolvent. Unless
she can elect to regard the securities in which the bonds were
invested as a substitute, *pro tanto*, for the bonds, she has no
effectual remedy. The thieves certainly have no claim to
the securities in which the proceeds of the bonds were
invested as against the plaintiff. They, without her consent,
have disposed of her property, and put it beyond her reach.
If the avails remained in their hands, in money, the direct
proceeds of the sale, can it be doubted that she could reach
it. It is not necessary to decide that, in the case supposed,
she would have the legal title to the money, but if that
question was involved in the case I should have great hesita-
tion in denying the proposition. That she could assert an
equitable claim to the money, I have no doubt. And this

equitable right to follow the proceeds would continue and attach to any securities or property in which the proceeds were invested, so long as they could be traced and identified, and the rights of *bona fide* purchasers had not intervened.

In *Taylor* v. *Plumer* (3 M. & Sel., 562) an agent, intrusted with a draft for money to buy exchequer bills for his principal, received the money and misapplied it by purchasing American stocks and bullion, intending to abscond and go to America, and absconded, but was arrested before he quitted England, and surrendered the securities and bullion to his principal, who sold them and received the proceeds.    It was held that the principal was entitled to withhold the proceeds from the assignee in bankruptcy of the agent, who became bankrupt on the day he received and misapplied the money. Lord Ellenborough, in pronouncing the opinion in that case, said: "It makes no difference, in reason or law, into what other form different from the original the change may have been made, whether it be into that of promissory notes for the security of money produced on the sale of the goods of the principal as in *Scott* v. *Surman* (Willes, 400), or into other merchandise, as in *Whitecomb* v. *Jacob* (Salk., 160), for the product or substitute for the original thing, still follows the nature of the thing itself so long as it can be ascertained to be such, and the right only ceases when the means of ascertainment fails."

If, in the case now under consideration, the plaintiff had entrusted the Warners with the possession of the bonds, and they had sold them in violation of their duty, for the purpose of embezzling the proceeds, and invested them in the notes and mortgage in question, the plaintiff could, within the authority of *Taylor* v. *Plumer*, have claimed them while in their hands, or in the hands of their assignees with notice, and would be adjudged to have the legal title.

In courts of equity the doctrine is well settled and is uniformly applied that when a person, standing in a fiduciary relation, misapplies or converts a trust fund into another species of property, the beneficiary will be entitled to the

property thus acquired. The jurisdiction exercised for the protection of a party defrauded by the misappropriation of property, in violation of a duty, owing by the party making the misappropriation, is exceedingly broad and comprehensive. The doctrine is illustrated and applied most frequently in cases of trusts, where trust moneys have been, by the fraud or violation of duty of the trustee, diverted from the purposes of the trust and converted into other property. In such case a court of equity will follow the trust fund into the property into which it has been converted, and appropriate it for the indemnity of the beneficiary. It is immaterial in what way the change has been made, whether money has been laid out in land, or land has been turned into money, or how the legal title to the converted property may be placed. Equity only stops the pursuit when the means of ascertainment fails, or the rights of *bona fide* purchasers for value, without notice of the trust, have intervened. The relief will be moulded and adapted to the circumstances of the case, so as to protect the interests and rights of the true owner. (*Lane* v. *Dighton*, Ambler, 409; *Mansell* v. *Mansell*, 2 P. Wms., 679; *Lench* v. *Lench*, 10 Ves., 511; *Lewis* v. *Madocks*, 17 Ves., 56; Perry on Trusts, § 829; Story's Eq., § 1258.)

It is insisted by the counsel for the defendants that the doctrine which subjects property acquired by the fraudulent misuse of trust moneys by a trustee to the influence of the trust, and converts it into trust property and the wrong-doer into a trustee at the election of the beneficiary, has no application to a case where money or property acquired by felony has been converted into other property. There is, it is said, in such cases, no trust relation between the owner of the stolen property and the thief, and the law will not imply one for the purpose of subjecting the avails of the stolen property to the claim of the owner. It would seem to be an anomaly in the law, if the owner who has been deprived of his property by a larceny should be less favorably situated in a court of equity, in respect to his remedy to recover it,

or the property into which it had been converted, than one who, by an abuse of trust, has been injured by the wrongful act of a trustee to whom the possession of trust property has been confided. The law in such a case will raise a trust *in invitum* out of the transaction, for the very purpose of subjecting the substituted property to the purposes of indemnity and recompense. "One of the most common cases," remarks Judge Story, "in which a court of equity acts upon the ground of implied trusts *in invitum*, is when a party receives money which he cannot conscientiously withhold from another party." (Sto.Eq. Juris., § 1255.) And he states it to be a general principle that "whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner, or the *cestui que trust.*" (§ 1258. See also, Hill on Trustees, p. 222.)

We are of opinion that the absence of the conventional relation of trustee and *cestui que trust* between the plaintiff and the Warners, is no obstacle to giving the plaintiff the benefit of the notes and mortgage, or the proceeds in part of the stolen bonds. (See *Bank of America* v. *Pollock*, 4 Ed. Ch., 215.)

It is, however, strenuously insisted that the defendants had no notice when they received the securities that they were the avails or proceeds of the bonds. That if they had notice they would stand in the position of their assignors, and that the property in their hands would be affected by the same equities as if no transfer had been made, is not denied. (*Murray* v. *Ballou*, 1 J. Ch., 566; Hill on Trustees, 259.) The learned judge, at Special Term, found, as has been stated, that the defendants had notice of the larceny of the bonds, and the use made of the money arising from their sale, at the time they received the notes and mortgage. The duty of this court, upon the question of notice, is limited to the examination of the case, with a view of ascertaining whether there was evidence to support the finding

of fact. If such evidence exists, the finding of the trial judge is conclusive.

We have examined, with much care, the voluminous record before us, and are of opinion that the finding is sustained by the evidence. The testimony was conflicting. The circumstances under which the defendants took the transfer of the securities were certainly unusual, and the facts then known by the defendants were calculated to create a strong presumption that the notes and mortgage came from investments of the stolen property. It was for the trial court to weigh the testimony, and, in the light of all the facts developed on the trial, to determine the question of notice. It would be a useless labor to collate the testimony on this subject, and we content ourselves with stating our conclusion, that the finding was warranted by the evidence.

The objection to the evidence, under a commission issued to William Jessup of Montrose, Pennsylvania, and which was executed by William H. Jessup as commissioner was, we think, properly overruled. In support of the objection, one of the defendants testified that he resided at Montrose in 1858, and that at that time two attorneys resided there, named respectively William and William H. Jessup, and an offer was made to prove that the judge who granted the order for the commission consulted a register of attorneys in which both names appeared, and selected the name of William Jessup, and inserted it in the order. The commission was executed two years and a half before the trial. It does not appear at what time it was returned to the clerk, but the presumption is that it was returned within a reasonable time after its execution. The objection that the commission was not executed by the person intended was not made until the evidence taken under it was offered on the trial. That the defendants were apprised of the facts upon which the objection was founded before the trial is quite evident.

*Prima facie* a commission directed to a person, omitting any mention of a middle name, and returned executed by a

person of the same name, with the addition of a middle name, is executed by the person named in the order. (*Franklin* v. *Talmadge*, 5 J. R., 84.) The ruling of the judge, in respect to the objection made to the commission, was clearly in furtherance of justice. The defendant had ample opportunity to raise the objection to the commission before the trial by a motion to suppress, and it should not be permitted that a party may lie by, and spring an objection of this kind on the trial for the first time, when the other party may be unable to meet it by proof, and when there is no opportunity to issue a new commission, or send it back to be executed by the proper person. It is, we think, a wholesome rule that objections to the execution of a commission where the party has an opportunity to make them before the trial, should be raised by motion, and if not raised in that way when such opportunity exists, they should be deemed to have been waived. Whether such objection is to formal defects merely, or as in this case goes to the right of the person who executed the commission to act as commissioner, makes, we think, no difference in the application of the rule, if the fact of disqualification is known to the party who seeks to exclude the evidence a sufficient time before the trial, to enable him to make his motion. (See 19 Wend., 438; *Sturm* v. *Atlantic Mut. Ins. Co.*, 63 N. Y., 77; 2 Wall., 33; 2 Bos., 267; 5 Duer, 100.)

The judgment should be affirmed.

All concur.

Judgment affirmed.