BISHOP v. HOWE et al.

(Supreme Court, Trial Term, Monroe County. May 11, 1909.)

1. DEEDS (§ 211*)—EXECUTION—DURESS.

In a suit to set aside a deed by a married woman, conveying her separate property in settlement of her husband's defalcations, evidence *held* insufficient to warrant a finding that the conveyance was obtained from her by duress.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 646; Dec. Dig. § 211.*]

2. DEEDS (§ 17*)—CONSIDERATION.

Where property purchased by a husband, the title to which was taken in the name of his wife, was paid for largely with moneys misappropriat-

ed by him from the defendants, by whom he was employed, his duty to make restitution is sufficient consideration for the wife's deed conveying the property to defendants.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 17.*]

3. TRUSTS (§ 95*)—CONSTRUCTIVE TRUST—PROPERTY PURCHASED WITH STOLEN MONEY.

Where a husband purchased real estate in the name of his wife with money stolen from defendants, they were entitled to impress a trust thereon in their favor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 145; Dec. Dig. § 95.*]

4. CONTRACTS (§ 128*) — CONSIDERATION — VALIDITY — RESTITUTION — PUBLIC POLICY.

An agreement by a servant, who had misappropriated money from defendants, and his wife, to restore by a conveyance of their property, without any promise on defendants' part not to institute criminal proceedings, though with the expectation that, if restoration were made, no prosecution would be instituted, was not violative of public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 633–653; Dec. Dig. § 128.*]

Suit by Anna Bishop against J. Henry Howe and others. Complaint dismissed.

This is an action brought to set aside a deed of real estate situate on Monroe avenue, in the city of Rochester, made by the plaintiff to the defendant J. Henry Howe in July, 1906; also to have declared a nullity her signature and acknowledgment to a deed of real estate owned by her husband, Wilbur L. Bishop, situate in the town of Brighton, and on Laburnam Crescent, in the city of Rochester, and her signature to assignments of stock in the Monroe Concrete Block Company, and to transfers of certain life .insurance policies on the life of her husband in which she was named as the beneficiary.

George D. Reed, for plaintiff.
James M. E. O'Grady, for defendants.

SUTHERLAND, J.   The plaintiff in this action seeks to set aside a deed of a house and lot on Monroe avenue, in the city of Rochester, from her to the defendant J. Henry Howe, for the benefit of the firm of Howe & Bassett. She also seeks to have declared null and void the transfer of certain stock and insurance policies, and to have declared inoperative her signature to a deed executed by her and her husband of real estate owned by him in the town of Brighton, and on Laburnam Crescent, in the city of Rochester, on the ground that the execution of all these papers by her was procured by duress, through threats made to her by the defendant Howe that, if the property was not transferred to them, Howe & Bassett would institute criminal proceedings against her husband, Wilbur L. Bishop, who had misappropriated moneys belonging to them while he was in their employ. It was claimed by Howe & Bassett, at the time of the transfers in July, 1906, that the defalcations amounted to upwards of $15,000. Subsequent investigation by an expert accountant tended to show that the misappropriations amounted to about $25,000 and extended over a long period of years.

Wilbur L. Bishop was the head bookkeeper and confidential office man of the firm of Howe & Bassett, who did a· large business as

---

plumbers in the city of Rochester, and at times had extensive contracts in the city of New York. The defalcations were not discovered until the year 1906, in May of which year Bishop left their employ. The defendant Howe, on examining the books kept by Bishop, discovered irregularities and called for an explanation from Bishop, who finally admitted the misappropriation and stated in substance that the books would show the amount. Mr. Howe stated to him that the irregularities would amount to $20,000, if they continued to the extent that he had discovered in his examination of the books covering a period of about two months, to which suggestion Bishop made no response. Bishop then offered to make restitution by turning over his property, which he enumerated, including the house and lot on Monroe avenue, which he did not inform Mr. Howe then stood in the name of plaintiff.

On July 9, 1906, Bishop informed the plaintiff of the discovery by Mr. Howe of the defalcation, and plaintiff then called up Mr. Fuller, counselor at law of Rochester, on the telephone for his advice. She saw Mr. Howe the next day, July 10th, at the office of the Monroe Concrete Block Company. Her husband meantime had given to Mr. Howe a description of the property which he proposed to turn over to the firm, and Mr. Howe's attorney, Mr. O'Grady, had prepared deeds of the real estate. At the interview between the plaintiff and her husband and Mr. Howe on the 10th, she says Mr. Howe threatened to have her husband sent to state's prison unless all of the property owned by the plaintiff and her husband was turned over to the firm. Mr. Howe denies that any threat of imprisonment was made to her, then or at any time. However that may be, it is undisputed that on the 10th, after the interview with Mr. Howe, she and her husband went to Mr. Fuller's office, and there the deeds were executed; Mr. Howe declining to accompany them on that occasion. The next day Mr. Fuller brought the deeds, executed and acknowledged, to Mr. Howe, who refused to take them, referring Mr. Fuller to Mr. O'Grady, saying, also, that the firm of Howe & Bassett wanted the money that had been taken from them, and not the property covered by the deeds. Two days thereafter Mrs. Bishop gave her husband a check for $500, with the proceeds of which he left the city temporarily, and the following day Mr. Howe visited plaintiff, who was then living in the Monroe avenue house, and the plaintiff says that at that interview he again threatened to have her husband sent to prison unless all of their property was turned over to the firm. Meantime the plaintiff had visited Mr. O'Grady's office to interview him as to the matter. Mr. Howe left Rochester for Boston July 15th, and on the 16th Mr. Fuller and the plaintiff went to Mr. O'Grady's office, where the deeds were delivered and a receipt given back in full for all claims of Howe & Bassett against Bishop; and on the 17th the deeds were recorded.

The transfers of the stock and insurance papers were made in part at the time the deeds were executed or transferred; but Mr. Bishop's signature was lacking on some of the papers, and he shortly returned to Rochester and completed the same; and at various times down to January, 1907, the plaintiff signed other papers necessary to complete the transfers of the policies. Shortly thereafter Mr. Bishop left

Rochester, and his whereabouts were not disclosed upon the trial of this action. Later in 1907 an action was commenced by the plaintiff to set aside the transfer of the Monroe avenue real estate, and a lis pendens filed, which action was discontinued and this action subsequently brought; the plaintiff alleging that all of the transfers were procured from her by fraud and duress practiced upon her by the defendants Howe & Bassett, and that she executed the same solely because of the threats that were made that if she did not sign the papers her husband would be sent to state's prison.

I am thoroughly satisfied that the execution of all of these papers was the free and voluntary act of the plaintiff, and that she was not coerced nor intimidated into making the transfers by threats of criminal prosecution; and I am also convinced that the real estate on Monroe avenue which stood in her name at the time the defalcations were discovered was purchased and built upon for the most part with moneys which in the first instance had been wrongfully taken from Howe & Bassett by the plaintiff's husband. The evidence shows no other source from which moneys in any such amounts could have come into the possession of the Bishops. These moneys were deposited from time to time in various bank accounts in the name of Bishop, or in the name of his wife, or in their joint names. Real estate had been purchased by him and sold again. Some of it had been placed in the name of his wife. A profit had been gained on the sale of some of this property; but the origin of this property, whatever its form, was the misappropriation of the funds of Howe & Bassett by the plaintiff's husband. On July 16, 1906, papers were prepared by Mr. O'Grady, in a civil action against Mr. Bishop, and a warrant of attachment had been prepared covering all of the real estate conveyed, including the Monroe avenue house; and I am satisfied that the plaintiff was informed by Mr. Howe that a civil action would be instituted to recover this property unless a voluntary conveyance thereof was made. It is probably true that the plaintiff may have gained the impression, from what Mr. Howe said to her, that, unless restitution were effected, criminal as well as civil proceedings would be instituted; and it is natural to suppose that the plaintiff made these transfers in the hope that, if restitution were made, no criminal prosecution would be instituted. No arrest was made, and the defalcation had not been made public. But I am convinced that the fear of her husband's imprisonment was not the only inducement operating upon her mind.

The transfers are supported by an abundant and valid consideration, namely, the duty on the part of Bishop to make restitution of the moneys misappropriated, and the fact that those moneys had been the means by which this very property had been acquired. Howe & Bassett probably could have successfully maintained an action to reach and have impressed with a trust in their favor the real estate in question (Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152); and I am satisfied that the transfers were made by her in recognition of the just claim which the firm of Howe & Bassett had upon this property and upon all of the financial resources of her husband. To make restitution of moneys misappropriated is not to be discouraged under such circumstances. No principle of public policy is thereby violated.

There was here no agreement, express or implied, that a criminal prosecution should not be instituted. No doubt the plaintiff hoped, and probably expected, that, if restitution were made so far as she and her husband were able, there would be no criminal prosecution. She probably feared that if restitution were not made criminal prosecution would follow. But I doubt if the members of the family of a person guilty of such a crime ever make sacrifices in order that restitution be effected, where such hope is not entertained on the part of the accused and his friends who join with him in the effort to make good the loss occasioned by his criminal misappropriations. But the presence of the fear of evil consequences, and the hope that those consequences may be averted in case restitution is made, do not make restitution odious in the eyes of the law, where no undue advantage is taken, and when the parties act deliberately and by the advice of their own counsel, and after time for reflection is given, and where there is no agreement or intimation that immunity from criminal prosecution will be extended if restitution is made; nor should a settlement of civil rights thus accomplished be overthrown.

There was in this case no sudden demand, accompanied by a threat of immediate prosecution unless the demand were at once complied with. There was no moral coercion overpowering the judgment and will of the grantor. She acted voluntarily and with plenty of time for deliberation. She consulted able and resourceful counsel before she had any interview with either of the defendants or their attorney. She had time to learn from her husband the truth as to what he had done with the money taken from the defendants and what the amount of his misappropriations was. He was not called as a witness in this case and is not a party to the action. He was treated with extraordinary kindness by the firm that he had wronged, and the reparation which he and the plaintiff have made should stand. The value of the insurance policies and stock is not fully shown, but the total property turned over is not sufficient to make up the loss which his wrongdoing had brought upon his employers. The law of this case is fully covered by the opinion of the Court of Appeals in Barrett v. Weber, 125 N. Y. 18, 25 N. E. 1068, where a wife sought to set aside a bond and mortgage made by her, given to secure repayment due the defendants for property misappropriated by her husband. Her action was unsuccessful; and in discussing what constitutes such duress as will avoid a conveyance the court says, at page 24 of 125 N. Y., and page 1070 of 25 N. E.:

"A threat to sue her at law for the value of the goods that had gone into her possession, or to prosecute her husband and nephew criminally for the felony, may have influenced her mind, and induced her to sign the mortgage; but whether this operated to coerce her was, under all the circumstances, a question of fact which has been found against her. In order to avoid the contract on the ground that it was made under fear of imprisonment, the imprisonment, threatened or feared, must be shown to have operated upon her mind so as to deprive the contract of the character of a voluntary act, and the evidence was not of such a conclusive nature as to require such a finding. In order to avoid the bond and mortgage on the ground that they were given to compound a felony, it was necessary to show that there was some agreement or promise on the part of the mortgagee to forbear prosecution for the crime, or to suppress evidence that would tend to prove it."

Because this plaintiff was not coerced into signing these transfers, but acted deliberately and with the advice of able counsel, and with knowledge that Howe & Bassett had a just claim upon her husband and upon the property which stood in her own name, and there being no agreement to compound a felony or to suppress the prosecution for the crimes which he had committed, her complaint should be dismissed, with costs.