THE PEOPLES NATIONAL BANK v. J. D. WAGGONER AND G. D. HILL, TRADING AS WAGGONER & HILL, AND J. S. BARR.

(Filed 11 April, 1923.)

**1. Equity—Fraud—Following of Funds.**

When a man's property has been obtained from him by actionable fraud or covin, the owner can follow and recover it from the wrongdoer as long as he can identify or trace it; and the right attaches not only to the wrongdoer himself, but to any one to whom the property has been transferred otherwise than in good faith and for a valuable consideration, and this applies not only to specific property, but to money and choses in action.

**2. Same—Trusts—Implied Trusts.**

The right of the owner of property to follow the property obtained from him by the actionable fraud of another is, upon the equitable doctrine, which in proper instances impresses a trust upon the property and protects and preserves the same for the owner's benefit, to the extent of his interest therein.

**3. Same—Admixture of Goods.**

Where one has obtained property from the owner by actionable fraud and covin, the application of the principle by which the owner may follow it and impress a trust thereon in his favor in its converted state is not affected by the fact that the person perpetrating the fraud has so commingled it with his own property that it may not be distinguished, for in such case the equity attaches to the whole property, it being required that the one who had perpetrated the fraud establish the identity of his own property from the other upon which the trust attaches, for otherwise the loss, if any, must fall upon him.

**4. Same—Receivers.**

Where equity will impress a trust upon property in the hands of one who has obtained it by fraud or covin, and the property or fund is threatened both by his fraud and insolvency, the principles of equity will justify and call for the appointment of a receiver to take charge of the property and conserve it pending the litigation. C. S., 860.

**5. Same—Banks and Banking—Employer and Employee—Collusion— False Entries.**

A trading partnership secretly colluded with one employed at a bank as a bookkeeper for him to pay their checks when they had no balance therein and falsify the entries on the books to show a credit, and upon money so obtained from time to time the concern conducted its business, after having paid in a small capital at the start. Upon application of the bank for a receivership, and this condition appearing by affidavit, and being established: *Held*, the property of the partnership, consisting of merchandise, choses in action, etc., was impressed with a trust in the bank's favor, arising from the fraud practiced upon it, and the application for the receiver for the entire property was properly granted in the absence of the proof by the defendants of the identity of their separate property which they had commingled with the other.

APPEAL by defendant from *Brock, J.,* at November Term, 1922, of FORSYTH.

Upon the affidavits and evidence, and pleadings submitted, and in response to a request thereto from defendants Waggoner & Hill, the court made the following as the findings of fact:

1. That soon after 1 January, 1922, the defendants, J. D. Waggoner and G. D. Hill, formed a copartnership under the firm name of Waggoner & Hill to engage in the business of livestock dealers, and the contribution of the partners to the capital stock of the copartnership consisted in a lot of mules to the value of $3,000, which had not been paid for by J. D. Waggoner; and approximately $2,000 in cash, an automobile, and a debt due G. D. Hill for services from J. D. Waggoner, which was valued at about $1,000, making the total capital of the copartnership of $6,000; that checks were paid on 10 January of $1,500 and 28 January of $1,500, 1922, by the firm, which represented the purchase price of the mules put into the firm by J. D. Waggoner.

2. That defendant J. S. Barr was an employee of the plaintiff bank as a bookkeeper, and kept the individual ledger in which was kept the account of Waggoner & Hill, and at the request of Waggoner & Hill the said J. S. Barr was employed by them as their bookkeeper and confidential agent, keeping their books at night and his leisure time from his duties at the bank; that this employment by Waggoner & Hill was without the knowledge or consent of the plaintiff bank.

3. That Waggoner & Hill, in the conduct of their business of purchasing livestock, drew checks upon the plaintiff bank for large sums

of money which the defendant J. S. Barr cashed when the said Waggoner & Hill had no money to their credit with the plaintiff, until on 9 March, 1922, their overdraft with the plaintiff amounted to $4,082.63; that J. S. Barr informed them that he had cashed checks for them with the plaintiff when they had no money to their credit and insisted and begged them to make the overdraft good; that the defendants Waggoner & Hill promised to do so, but failed and neglected to comply with the promise, and J. S. Barr informed them that he would be compelled to make a false entry on his books so that the officials of the plaintiff would not discover the abstraction of the plaintiff's money by means of his paying the checks of Waggoner & Hill when there was no money to their credit; that the defendant Waggoner & Hill told J. S. Barr not to turn down their checks as it would ruin them and to handle it the best he could so it would not be found out, and promised to get up the money and make the overdraft good. That on said 9 March, 1922, the overdraft of $4,082.63 was transferred from the debit side of the account to the credit side of the account, thereby making a difference in the real status of the account of double this amount and concealing thereby the abstraction of plaintiff's money.

4. That subsequent to 9 March, 1922, the defendants Waggoner & Hill continued to draw checks, well knowing at the time that there was no money to their credit with the plaintiff with which to pay said checks, and took up the fictitious credit, and thereafter, on 23 August, 1922, another overdraft arising from the cashing of checks for the livestock and the operating expenses of the business until said overdraft amounted to $1,863.11, which was transferred by J. S. Barr with the full knowledge and assent of the defendants, Waggoner & Hill from an overdraft to a credit balance on said account; that by reason of the false entries on 9 March, 1922, and 23 August, 1922, the defendant Waggoner & Hill abstracted funds from the bank by means of such false entries aggregating the sum of $11,891.48, which sum was used in their business as livestock dealers in the purchase of livestock which was commingled with their other property.

5. That the defendants Waggoner & Hill were purchasing mules from Lummis, Coggin & Company from Atlanta for purpose of resale in their business as livestock dealers; that in the purchase of the mules the defendants Waggoner & Hill gave to Lummis, Coggin & Company the checks which appear in paragraph six of the complaint; that said checks were paid out of the funds of the plaintiff without its authority by J. S. Barr and which payment with the full knowledge of Waggoner & Hill was concealed from the plaintiff; that the proceeds of the checks which were paid as aforesaid were used in the purchase of mules which went into the business of Waggoner & Hill and were commingled with their other property.

6. That in the sale of the livestock purchased with plaintiff's money secured from it as herein set out, the defendants Waggoner & Hill secured upon the resale of said livestock to various and sundry persons, notes, liens, open accounts and chattel mortgages of between $20,000 and $30,000; that the business of Waggoner & Hill has been almost entirely operated upon and by means of the money fraudulently obtained by reason of the wrongful and unlawful acts of J. S. Barr and of themselves; that the notes, mortgages, liens and open accounts are in the possession of the defendants Waggoner & Hill and said evidences of indebtedness are now maturing during the months of October, November and December, 1922, and January, 1923, and that said notes, mortgages, open accounts, liens, etc., represent the purchase price of the livestock from the purchasers received upon a resale of the property so fraudulently acquired.

7. That the defendants Waggoner & Hill and J. S. Barr are insolvent. That from an inspection of the original checks paid by the plaintiff bank under the circumstances as aforesaid, and which went into the livestock business of the defendants Waggoner & Hill, amounted to $79,829.41, and the total amount of the deposits made by Waggoner & Hill was $49,046 up to the time the account was closed out; that if the defendants Waggoner & Hill are permitted to sell the livestock on hand and to collect the notes, liens, accounts, mortgages, etc., arising from the sale of the livestock purchased by them with plaintiff's money secured as aforesaid, the plaintiff will suffer irreparable loss and damage.

8. That the livestock purchased with plaintiff's money so fraudulently obtained by the defendants Waggoner & Hill was commingled with the livestock of the defendants Waggoner & Hill, and the notes, mortgages, liens, accounts, etc., secured upon the resale of said livestock as aforesaid have been commingled with the property and effects of the defendants Waggoner & Hill in their livestock business until at the present time such small amount, if any there was, originally put in the business by Waggoner & Hill cannot be distinguished or separated from the general funds of the business of Waggoner & Hill, and that the commingling of the money and property as aforesaid which was so fraudulently obtained, was done with the full knowledge of Waggoner & Hill.

And thereupon confirmed and continued the appointment of the receiver as set forth in the record. From this order defendants Waggoner & Hill, having duly excepted, appealed to this Court.

*Swink, Clement & Hutchins, and O. T. Efird for plaintiff.*
*Parrish & Deal and McMichael, Johnson & McMichael for defendants.*

HOKE, J. In *Mfg. Co. v. Summers,* 143 N. C., 102, it was held: "When a man's property has been obtained from him by actionable fraud or covin, the owner can follow and recover it from the wrongdoer as long as he can identify or trace it; and the right attaches not only to the wrong-doer himself, but to any one to whom the property has been transferred otherwise than in good faith and for valuable consideration; and this applies not only to specific property, but to money and choses in action."

This in the main is an equitable doctrine which, on the facts of the present record and like cases, is made effective by impressing a trust upon the property and protecting and applying same for plaintiff's benefit to the extent of his interest therein, and is very generally recognized in the decided cases and approved text books on the subject. *Sumner v. Staton,* 151 N. C., 198; *Edwards v. Culbertson,* 111 N. C., 342; *Avery v. Stewart,* 136 N. C., 426; *Baltimore National Bank v. Insurance Co.,* 104 U. S., 54; *Newton v. Porter,* 69 N. Y., 133; Pomeroy's Equity Jurisprudence, sec. 1053; 39 Cyc., 172. In *Culbertson's case, Shepherd, J.,* delivering the opinion, quotes with approval from Pomeroy's Equity Jurisprudence as follows:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the poperty relieved from the trust."

And in *Newton v. Porter, supra, Judge Andrews,* speaking to the question said: "It is immaterial in what way the change has been made, whether money has been laid out in land or land laid out in money, or how the legal title may be placed. Equity only stops the pursuit when the means of ascertainment fail, or the rights of bona fide purchasers for value and without notice of the trust have intervened." Nor is the position in the present instance materially affected by the suggestion made in behalf of the appellants that the defendants, members of the partnership, had originally invested six or seven thousand dollars in the business, and which, or a part of which, may be represented in the stock, notes, mortgages, etc., the subject of the present litigation, the

approved principle being that if, in cases like the present, the holder of the legal title has so mingled his own with the beneficiaries' property that they can no longer be distinguished, the trust will be declared upon the entire fund and the loss, if any, must fall on the perpetrators of the wrong. *Lance v. Butler,* 135 N. C., 419; *Wells v. Batts,* 112 N. C., 291; *Walburn & Co. v. Timmon & Nissen,* 55 S. S., 456; *Bank v. Ins. Co.,* 104 U. S., 54; 30 Cyc., 536-538, and cases cited.

In this last work, the position is correctly stated as follows: "Where a trustee so mingles the trust fund or property with his own or so invests it in property together with his own that the trust fund or property cannot be separated or the amount of each ascertained, the whole mixed fund or property becomes subject to the trust except so far as the trustee may be able to distinguish or separate his own, and the burden of making the separation or distinction is on the trustee or his representative, and the rule applies as long as any portion of the fund or property with which the trust fund or property can be traced remains.

Applying these principles, the facts as found by the court showing that the defendant partnership having corrupted the bookkeeper of plaintiff bank and induced him to purloin its money for their benefit by making false entries in his books, which has been to a large amount, invested in the property, the subject-matter of this litigation, the law as stated will impress a trust upon the property for plaintiff's benefit. And it appearing further that the safety of the fund is threatened both by the fraud and insolvency of defendants, holders of the legal title, the case comes directly within the equitable principle embodied in our statute on the subject, C. S., 860, and which justifies and calls for the appointment of a receiver to take charge of the property and conserve same pending the litigation. The section referred to, in subsection 1, provides as follows: "A receiver may be appointed, before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired; except in cases where judgment upon failure to answer may be had on application to the court." See numerous authorities cited in the section.

There is no error and the judgment of the Superior Court is

Affirmed.