Levin v. Jacobson, 2016 NCBC 92.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 12062

ERIC LEVIN and HOWARD
SHAREFF, derivatively in the right
of LAKEBOUND FIXED RETURN
FUND, LLC,

         Plaintiffs,

v.

HOWARD A. JACOBSON and
PROVINCE GRANDE OLDE
LIBERTY LLC,

         Defendants.

**FINAL JUDGMENT**

1.    **THIS MATTER** was called for trial before a jury during an August 31, 2016 civil session of the Wake County Superior Court.

> *Parry Tyndall White, by James C. White and Michelle M. Walker, for Plaintiffs Eric Levin and Howard Shareff, individually and derivatively in the right of Lakebound Fixed Return Fund, LLC.*

> *Robinson Elliott and Smith, by William C. Robinson, for Defendant Province Grande Olde Liberty LLC.*

> *Howard A. Jacobson, Pro se.*

Bledsoe, Judge.

2.    During the pretrial conference, counsel for Plaintiffs Eric Levin and Howard Shareff, derivatively in the right of Lakebound Fixed Return Fund, LLC ("Lakebound") (collectively, "Lakebound") informed the Court that Plaintiffs were (i) voluntarily dismissing all claims by former Plaintiff Shareff & Associates, DDS PA and (ii) voluntarily dismissing Plaintiffs' claim for conversion of $100,000 of Lakebound's funds allegedly used to purchase an interest in former Defendant CILPS

Acquisition LLC ("CILPS"), which had the effect of voluntarily dismissing the only claim against former Defendant CILPS. Plaintiffs presented to the jury their derivative claim on behalf of Lakebound for conversion of $188,000 against Defendant Howard A. Jacobson ("Jacobson") and sought the imposition of a constructive trust over land held by Defendant Province Grande Olde Liberty, LLC ("PGOL"), which PGOL had purchased, in part, with the $188,000 allegedly converted by Jacobson.

3. Following the conclusion of the presentation of evidence and the arguments of counsel, the following questions were submitted to the jury and answered as indicated:

(1) Did defendant Howard Jacobson convert $188,000 of Lakebound's funds by transferring $188,000 of Lakebound's funds to Province Grande Olde Liberty, LLC?

  X  Yes         No

If you answer this issue YES, please proceed to Issue #2.

If you answer this issue NO, you shall not answer Issue #2.

(2) Is the land purchased by Province Grande Olde Liberty, LLC with $188,000 of Lakebound's funds subject to a constructive trust in favor of Lakebound?

  X  Yes         No

4. On September 7, 2016, the jury returned its unanimous verdict in favor of Plaintiffs on both issues.

5. At the pretrial conference in this matter and at Defendants' request, the Court bifurcated Plaintiffs' claim for punitive damages, which was then to be tried to the same jury only in the event the jury returned a verdict for Plaintiffs on their

conversion claim against Jacobson. On September 8, 2016, however, Plaintiffs informed the Court that they were abandoning their request for punitive damages.

6. In light of the jury's verdict in favor of Plaintiffs' constructive trust remedy over the land purchased by PGOL, the Court received supplemental briefing from the parties and held a hearing on October 28, 2016 to determine the terms of the constructive trust.

7. Therefore, the Court further FINDS and CONCLUDES as follows:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

8. Plaintiffs seek a constructive trust over an undivided 79.4% interest in the land purchased by PGOL at the Olde Liberty Golf and Country Club (the "PGOL Land"), on the theory that Lakebound's converted funds accounted for 79.4% of the cash paid at closing by PGOL. In opposition, PGOL advances a number of arguments against the imposition of a constructive trust on the PGOL Land. In addition, PGOL argues that a constructive trust over the PGOL Land should not exceed a 2.83% interest, which represents the proportion of the converted funds to the total purchase price of the PGOL Land, inclusive of debt.

9. The North Carolina Supreme Court has defined a constructive trust as "a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title or, of an interest in, property which such holder acquired through . . . circumstance[s] making it inequitable to retain it against the claim of the beneficiary of the constructive trust." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530, 723 S.E.2d 744, 751 (2012) (quoting *Wilson v.*

*Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970)). "The constructive trust plaintiff wins an *in personam* order that requires the defendant to transfer specific property in some form to the plaintiff." *Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 425 (1988) (citation omitted). "Trial courts have broad discretion to fashion equitable remedies to protect innocent parties when injustice would otherwise result." *Kinlaw v. Harris*, 364 N.C. 528, 532, 702 S.E.2d 294, 297 (2010).

10. As an initial matter, the Court notes that PGOL's arguments against the imposition of a constructive trust on the PGOL Land ignore the jury's verdict and are more properly brought in a motion for judgment notwithstanding the verdict. As such, the Court finds those arguments irrelevant in preparing this judgment.

11. The evidence shows that the total purchase price of the PGOL Land was $6,620,000.00. (Trial Exhibit 83.) At closing, PGOL paid $236,761.56 in cash and financed the remainder of the purchase price with a loan in the amount of $6,465,000.00 from Paragon Commercial Bank ("Paragon"). (Trial Exhibit 83.) The jury found that $188,000 of the cash paid by PGOL at closing were funds converted by Jacobson from Lakebound. (*See also* Trial Exhibit 82.)

12. Plaintiffs argue, and the Court agrees, that the constructive trust should be imposed over a percentage interest in the PGOL Land in order to capture any profits arising from the use of the converted funds. "[U]nder application of the rule of trust pursuit, the trust follows and embraces not only the property or its proceeds or products, but ordinarily it also includes any profit or increase in the value of such

proceeds or products over the original trust property." *Edgecombe Bank & Trust Co. v. Barrett*, 238 N.C. 579, 586, 78 S.E.2d 730, 736 (1953).

13.    Plaintiffs argue that Lakebound should hold a 79.4% interest in the PGOL Land because Lakebound's $188,000 accounted for 79.4% of the $236,761.56 in cash paid at closing.  No North Carolina court appears to have addressed the treatment of a loan on property when the property is subject to a constructive trust.  Plaintiffs rely on non-binding authority to argue that its interest in the PGOL Land should be "determined by reference to the amount invested (in other words, the cash portion of the purchase price), disregarding the amount of the mortgage loan."  Restatement (Third) of Unjust Enrichment and Restitution § 55 cmt. n (2011).

14.    The cases cited by Plaintiffs, however, do not support their position.  In *Kim v. Parcel K-Tudor Hall Farm LLC*, a case relied upon by Plaintiffs, the Fourth Circuit analyzed a constructive trust in which the trial court set the plaintiff's proportional interest based on the property's total purchase price, including a purchase money note.  499 F. App'x 313, 319 (4th Cir. 2012) (reversing trial court on other grounds).  On remand and after a bench trial, the trial court again calculated the amount of the constructive trust as plaintiff's proportion of the total purchase price of the property, inclusive of debt.  *Kim v. Parcel K-Tudor Hall Farm, LLC*, No. MAB 09-CV-1572, 2014 U.S. Dist. LEXIS 163740, at *10 (D. Md. Nov. 20, 2014).

15.    Plaintiffs also cite *Belcher v. Birmingham Trust Nat. Bank*, 348 F. Supp. 61, 84 (N.D. Ala. 1968), but that case does not provide that a constructive trust on real property should be measured by the amount of cash paid at closing.  Instead,

*Belcher* states that a constructive trust "may be measured by the amount of [converted funds] so used in relation to the total purchase price, provided there is no doubt as to the proportion of funds actually invested" *Id.* In this case, the evidence clearly shows that the purchase price included the $6,465,000 loan from Paragon.

16. In one case cited by Plaintiffs, a California court did award a constructive trust based on the proportion of the down payment without regard to the purchase money deed of trust on the property. *See Martin v. Kehl*, 145 Cal. App. 3d 228, 243–44, 193 Cal. Rptr. 312, 321 (Cal. App. 2d Dist. 1983). In that case, however, the court ignored the amount of the purchase money deed of trust because the dispute involved the parties' agreement to purchase the property together. *Id.* In contrast, here an act of conversion gave rise to the constructive trust. While Plaintiffs are entitled to a constructive trust to remedy that act of conversion, the Court cannot read the evidence as giving rise to some sort of failed joint venture by which Plaintiffs should be deemed to be a party to the Paragon loan with PGOL.

17. In the absence of a North Carolina case directly on point, Plaintiffs argue that North Carolina law nevertheless directs the Court to ignore the Paragon loan when shaping the constructive trust because in cases involving the intermingling of property, "the trust will be declared upon the entire fund[,] and the loss, if any must fall on the perpetrators of the wrong." *Peoples' Nat'l Bank v. Waggoner*, 185 N.C. 297, 297, 117 S.E. 6, 8 (1923). *Waggoner* dealt with the problem of property intermingled to such a degree that the interests of the legal title holders are no longer distinguishable from those of the equitable owners. *Id.* The Supreme Court's holding

there, however, still acknowledged that separate or identifiable interests should be respected. In such scenarios, "the whole mixed fund or property becomes subject to the trust *except so far as the trustee may be able to distinguish or separate his own*[.]" *Id.* (emphasis added). In this case, the sources of the funds used to purchase the PGOL Land are readily distinguishable, and *Waggoner* counsels that those separate interests cannot be ignored.

18. Therefore, the Court concludes that it is not compelled by any North Carolina law nor persuaded by any other authority that equity demands the constructive trust be calculated as a percentage of the cash paid at closing by PGOL as urged by Plaintiffs. *See Kim*, 2014 U.S. Dist. LEXIS 163740, at *10 (calculating the constructive trust as the plaintiff's proportion of the total purchase price for a parcel of land); *Belcher*, 348 F. Supp. at 84 (holding that the constructive trust may be calculated by reference to the total purchase price of the property).

19. Instead, the Court concludes, after careful review of the evidence introduced at trial and in the exercise of the Court's discretion, that equity will be served by calculating the constructive trust as a proportion of the total purchase price of the PGOL Land, inclusive of the Paragon loan. As stated above, the Court has not found any law compelling the Court to ignore the mortgage portion of the purchase price on the PGOL Land. Furthermore, Plaintiffs have not offered evidence—apart from the high value of the loan relative to the down payment, which the Court does not consider as determinative in and of itself—that PGOL acted wrongfully in obtaining the loan such that equity demands that the Court ignore the existence of that debt.

20.     Plaintiffs argue that the subsequent settlement of the Paragon loan at a severe discount and the Bankruptcy Court's recharacterization of some of PGOL's debt as equity—*see In re Province Grande Olde Liberty, LLC*, 13-00122-8-RDD, 2014 Bankr. LEXIS 4922, at *22 (Bankr. E.D.N.C. Dec. 5, 2014), *aff'd*, No. 15-1669, 2016 U.S. App. LEXIS 14860 (4th Cir. Aug. 12, 2016)—reveals that the Paragon loan was a sweetheart deal for which PGOL will receive an undeserved windfall upon sale of the PGOL Land.  The subsequent treatment of the Paragon loan, however, does not alter the Court's view of the equities at the moment the conversion occurred and the constructive trust arose.  Apart from PGOL's use of the converted funds in purchasing the PGOL Land, the Court does not find sufficient evidence that the existence of the Paragon loan was inequitable to Lakebound.  Furthermore, to the extent PGOL's subsequent debt negotiations eliminated most of the Paragon loan, that conduct indirectly benefitted Lakebound by preserving PGOL's ownership of the PGOL Land. Had Paragon foreclosed on the property, Lakebound likely would not have had a constructive trust remedy available to it on the PGOL Land.

21.     The Court therefore concludes that the constructive trust in the PGOL Land should be calculated as the percentage of the converted funds to the total purchase price, inclusive of debt.  Based on the $6,620,000.00 purchase price, Lakebound's converted $188,000 comprises 2.83% of the total funds used to purchase the PGOL Land.

22.     Finally, a primary purpose of North Carolina's election of remedies doctrine is "to prevent double redress for a single wrong."  *Smith v. Oil Corp.*, 239 N.C. 360,

368, 79 S.E.2d 880, 885 (1954). To determine whether recovery is duplicitous, the Court should consider whether recoveries serve the same interests and are based on the same conduct. *United Labs, Inc. v. Kuykendall*, 335 N.C. 183, 193, 437 S.E.2d 374, 380 (1993). The evidence indicates that, although the conversion claim and the constructive trust remedy required different proof, Lakebound has suffered a single loss of $188,000 and can be made whole whether it recovers from Jacobson or PGOL. Therefore, the Court concludes that recovery of monetary damages for the conversion claim from Jacobson and under the constructive trust remedy from PGOL would constitute an impermissible double recovery. Thus, the Court concludes, in the exercise of its discretion, that Plaintiffs must elect between the money judgment against Jacobson and the constructive trust remedy against PGOL as Plaintiffs' sole remedy on behalf of Lakebound in this action.

23. **WHEREFORE**, the Court enters **JUDGMENT** as follows:

   a. Plaintiffs, on behalf of Lakebound, shall have and recover from Jacobson the sum of $188,000.00, plus interest at the legal rate, from December 31, 2009 until paid.

   b. PGOL holds a 2.83% interest in the PGOL Land it purchased on December 31, 2009 in a constructive trust for the benefit of Lakebound. Lakebound's beneficial interest in the PGOL Land is superior to PGOL's interest, and PGOL as trustee shall promptly execute a deed transferring the 2.83% interest in fee simple to Lakebound.

c. Plaintiffs, on behalf of Lakebound, shall only recover once for Lakebound's loss. Plaintiffs, on behalf of Lakebound, may recover either damages under the money judgment against Jacobson set forth in subparagraph (a) above or the constructive trust against PGOL set forth in subparagraph (b) above, but any recovery shall be non-cumulative, as Plaintiffs are not entitled to recover for Lakebound from both Jacobson and PGOL.

d. The Court defers consideration of (i) Plaintiffs' Motion for Attorney's Fees and Expenses and (ii) Plaintiffs' Motion to Appoint a Receiver for Lakebound Fixed Return Fund, LLC until the consideration of post-judgment motions, if any.

**SO ORDERED**, this the 5th day of December, 2016.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases