JUDGE ROBERTSON
delivered the opinion of the court:
John Cleveland made the following testamentary disposition of his estate by his will, published in November, 1852, and proved and recorded in May, 1853, in the county court of Woodford, in which he lived and died: Giving to his surviving wife a female slave and her increase, and declaring that, with that exception, his property should go as it would pass by law if he had died intestate, he made the following ulterior and contingent provision— *81 then having only one child, Emma Jane, but contemplating the possibility of another or more — “ Should my child or children not live to have heirs of their body, in that event, my desire is, that all of my estate be placed, by the county court of Woodford county, in the hands of trustees, who are to use the rents of my lands, hire of my negroes, and interest of money, for the education, feeding, and clothing of poor female orphan children of this State, such as are not worth one hundred dollars. If, at any time, there should be a surplus on hand, and not a sufficient number of the above described females to consume the same, in that event, boys in the same condition may be received. My desire is that the institution be placed on some part of my land in Woodford county. And, lastly, I desire that some branch of industry be connected with the institution.”
In the year 1865 Emma Jane Cleveland died an infant, her mother having previously died, also intestate. After-wards, the county court of Woodford appointed David Thornton and seven other gentlemen of that county trustees to execute the noble charity to which the testator had contingently dedicated Ms estate. And after this, on the 13th of March, 1866, this suit in equity was instituted by the appellee, as administrator of the deceased infant, Emma Jane Cleveland, against her guardian, the appellant, Lyne, and the other appellants, as the trustees of the charity, seeking a settlement with the guardian and a distribution of the estate among the legal representatives of Emma.
The income or profits of the estate as devised amounted to $26,920 33, and the property received from Emma’s deceased mother amounted to $756 70, making an aggregate of $27,677 12.
*82 The petition insisting that the charitable devise — depending, as charged, on a limitation too remote — was void, claimed that the testator’s estate as devised, as well as the said profits accruing since his death, was a fund for distribution among Emma’s next of kin, who were, therefore, ordered to be made parties.
The answer of the trustees, denying that the charity was void, claimed not only the estate devised, but its profits, as subject to their appropriation.
By consent of parties, the issue as to the income was submitted to the circuit court, reserving all other questions for further consideration. And, on that submission, the court adjudged to the appellee, as administrator, the said sum of $27,677 12. And the correctness of that decision is the sole question for revision by this court on this appeal.
There can be no doubt that the $756 70, deriwed from Emma’s mother, were properly adjudged to the appellee. And we are also of the opinion that the profits on the estate devised equally belong to him as a fiduciary.
Emma’s estate, being a fee contingently defeasible at her death, she had the right to use it during her life, subject only to the restriction of non-alienation of the capital or specific property derived from the testator. “All of my estate ” literally imports that only which he owned at his death and devised. Emma’s usufructuary light to it being unlimited by the will, the profits of her use were, necessarily, her absolute property, and no portion of the testator’s estate; and, consequently, “ all of my (his) estate,” without explanation or specification, did not include any of the profits. And if, as argued by the able counsel of the appellants, he had intended to include in his estate all the profits not consumed in the unrestricted *83 use, we must presume that such a purpose would have been expressed or in some way indicated.
The imputed uriskillfulness of the draftsman will not allow a judicial interpretation so vagrant and inconsistent as that assumed by the counsel of the appellants. Neither the letter, nor the spirit, nor the context, affords any intelligible clue to such a constructive intent. The instruction to the trustees to appropriate to the charity the rents, hire, and interest of the estate, clearly means only such profits as shall, after Emma’s death, accrue from the capital confided to their care. It cannot be consistently extended to profits which had been made by her. Nor can we see anywhere a semblance of limitation to her absolute right to all such profits.
Wherefore, the judgment of the circuit court is affirmed.