## Hornsby, Exor., et al. v. Hornsby, et al.

(Decided November 25, 1919.)

### Appeal from Shelby Circuit Court.

1. Wills—Antagonistic Provisions—Construction.—Where two or more clauses in a will appear to be antagonistic, it is the duty of the court in construing the instrument to harmonize the various parts thereof so as to make the whole homogeneous, and that construction will be adopted which will give effect to every part of the instrument, if it can be done without doing violence to the language employed.

2. Wills—Devisee of Personal Property for Life—Use of Property.—A devisee to whom personal property is given for life, is not entitled to the increase in the value of the corpus of the devise, but only to the use and benefit or income from such personal property.

WILLIS, TODD & BOND and W. P. THORNE for appellants.

THOMAS A. BARKER and TURNER & TURNER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part upon the original appeal and reversing in part upon the cross-appeal.

The executors named in the will of J. W. Hornsby, instituted this action in the Shelby circuit court for a construction of the will. The testamentary paper in question reads as follows:

"I, Joseph W. Hornsby of Shelby county, Kentucky, being of sound mind and memory, realizing the uncertainty of human life, and the absolute certainty of death, and being desirous of saying to whom and what way the property that it has pleased God to bless me with while

living shall be disposed of after my death, do make and publish this paper as my last will and testament, hereby revoking all other wills heretofore made.

"First: It is my will that as soon after my death as may be found convenient by my executors, that all my just debts (if any) and my funeral expenses be paid.

"Second: I give and bequeath to my wife, Jennie Calloway Hornsby, all the personal and household effects of every kind and description in our home absolutely, and also the use and benefit of my property, both real estate and personal during her life.

"Third: Then I will the estate divided equally after the death of my wife, Jennie Calloway Hornsby, between my brother, Thomas L. Hornsby, and my sister, Cordelia Calloway, wife of Samuel Calloway, deceased, and sister, Cynthia Hudson, wife of W. L. Hudson.

"Fourth: The share set apart to my brother, Thomas L. Hornsby, shall go to him absolutely, but if he should die before I do, then his share shall go equally to his children, and if any of his children at that time be dead, leaving children then said children shall have that interest in said share to which their parent if living would have been entitled.

"Fifth: The share set apart to my sister, Cordelia Calloway, shall go to her absolutely, but if she should die before my estate is wound up, her share shall be divided equally between the following named children of hers, to-wit: Joseph Calloway, Sam Calloway, Allen Calloway, Julia Bate, wife of Dr. B. A. Bate, Cordelia C. Walker, wife of J. W. Walker, and Lizzie Calloway.

"If at the time my estate is wound up, if any of the above named be dead leaving children, then said children, shall take that interest in said share to which their parents if living would have been entitled.

"If any of these children named shall be dead at that time leaving no children, then the interest in the share of the one so dying, shall go to the survivors of those named and their children.

"Sixth: It will be seen by the fifth clause of this will I have omitted one of my nephews, Irvine Calloway, that was not an oversight as he has gotten all of my estate that I want him to have.

"Seventh: The share of my estate set apart to my sister, Cynthia Hudson, shall be held in trust for the

use and benefit of my sister and her husband, W. L. Hudson, during her life, the income, that is the net income, to be paid to my sister annually or semi-annually as long as she lives. If she should die first leaving her husband, W. L. Hudson surviving, then one-half of my sister, Cynthia Hudson's share shall still be held in trust, the net income of said one-half shall be paid to W. L. Hudson during his life, after the death of my sister and her husband, said share shall be equally divided between my brother, Thomas L. Hornsby, and sister, Cordelia Calloway, and if either of them should be dead, then the interest of Thomas L. Hornsby is to his children and their children, and the interest of Cordelia Calloway is to go to her children that I have named in the fifth clause of this will, and their children.

"Eighth: I appoint my brother Thomas L. Hornsby, and my brother-in-law, W. L. Hudson executors of this my will, and ask them not to file any inventory of my estate in the clerk's office, but qualify and make sale of my property and wind up the affairs as soon in their judgment is expedient and profitable to all concerned.

"Ninth: Should either one of my executors named fail or refuse from any cause to qualify, the other shall act; if from any cause both should fail or refuse to qualify, then in that event the Shelby County Trust Company is requested to qualify.

"In testimony, whereof, I hereby set my hand and seal this the 23rd day of September, 1915..

"JOSEPH W. HORNSBY."

Hornsby died in 1918, leaving a widow but no children. His estate was valued at something more than $100,000.00, of which a farm of 304 acres constituted the major portion, the personal property amounting to somewhat more than $30,000.00.

The only clauses of the will in question are the second and eighth. The executors contend that these two sections of the paper are antagonistic and can not be harmonized, and under a rule of this court where two provisions of a will are repugnant, one of them must be disregarded, the second or last clause must prevail, it being presumed that the last statement in the will was the final conclusion of the testator.

For the widow, who is appellee, it is contended that the two clauses are not repugnant and may be harmo-

nized and read together, and when so read truly and correctly express the will and wish of the testator. The trial court held that under the eighth clause of the will the executors have no power to sell any of the real estate or personalty until after the death of the widow, who is the life tenant, except for the purposes of paying debts and expenses, and that the widow as life tenant is entitled to the use and possession of the real estate as long as she lives, free from the control of the executors, she to pay all taxes, insurance and expenses of repairs except the taxes which accrued previous to the death of the testator. And further, the executors were adjudged the right to hold all the personal property outside of the household equipment, including the hay and corn which had been sold by the executors, except the life tenant was adjudged entitled to the use, benefit and possession of the farming implements, machinery and live stock outside of the stock cattle in which her husband owned only a one-half interest. But she was adjudged entitled to have absolutely the increase on the cattle, "that is, the difference between the value at the time of the death of the testator and the amount for which they sold."

From this judgment the executors prosecuted an appeal and the widow a cross-appeal. From the second clause of the will it is obvious that the testator intended his wife, appellee, to have absolutely all of the household effects of every kind and description then in the home with the right to dispose of them as she saw fit. And further to have the use and benefit of all the balance of the property of the testator, both real and personal, so long as she lived, but she was granted no power of final disposition with respect to this last named property.

By the third clause of the will, the testator provides how his property should go after the death of his wife, which clearly indicates that the property was not to be divided until after the death of the widow, and as she is now living the devisees were not entitled to have a division. When we read the eighth clause which says, "I appoint my brother, Thomas L. Hornsby, and my brother-in-law, W. L. Hudson, executors of this my last will, and ask them not to file any inventory of my estate in the clerk's office but to qualify and make sale of my property and wind up the affairs as soon as in their

judgment is expedient and profitable to all concerned,''
we are forced to the conclusion that the testator in-
tended that the sale mentioned in winding up the affairs
should not be made until after the death of the life ten-
ant, and giving this clause of the will this construction,
which is but fair and reasonable, it harmonizes perfectly
with the second clause to which we above referred, and
reading the two together, we find the testator's inten-
tion to be to give to his wife absolutely all the household
effects of every kind and description then in the home
and give her the use and benefit throughout her life of
all the remainder of his property, both real and per-
sonal, and at her death the corpus of the estate, outside
of the household effects given to his wife absolutely with
full power of disposition, was to go to his brother and
two sisters in case they were then living; or if not, then
to certain of their children designated in the will. The
executors were then to take charge of the estate and wind
up the affairs as soon as in their judgment was expedient
and profitable to all concerned. Under this clause of the
will the executors were empowered to make an inventory
of the property immediately after the decease of the
testator, and to turn over the property to the life ten-
ant, taking such measures as were reasonably necessary
for the protection of the corpus thereof. The widow is
entitled to the income for her support because this is
clearly manifest from the last clause of the second para-
graph wherein it is stated that the wife shall have the
use and benefit of all of my property both real and per-
sonal during her life. He does not say nor indicate that
the property shall be sold and the money placed on in-
terest or invested, and she maintained from such a fund,
but she is to have the use and benefit of the property
itself during her life. So construed, there does not ap-
pear to be any repugnancy between the second and
eighth clauses of the will, and the trial court properly
construed the instrument to that extent.

The judgment in so far as it gives to the widow ab-
solutely ''all the increase on the cattle, that is, the differ-
ence between the value at the time of the death of the
testator and the amount for which sold,'' is erroneous,
for the reason that the widow as life tenant, was not en-
titled to take the corpus of the estate but only the in-
come therefrom. This rule is well stated in 17 R. C. L.

631, where it is said: "Any increase in the value of the principal fund during the existence of the life estate is as a rule the property of the remainderman and not of the life tenant. Thus, an increase in the value of securities while in the hands of the life tenant belongs to the remainderman, as does also a profit made by the purchase and sale of securities, and the same is true of an increase in the value of real estate. . . . It would seem, however, that where the increased value results not from earnings, but from increase in value of the corpus, it belongs to the remainderman." Letcher v. German Bank, 134 Ky. 24; Bains v. Globe Bank, 136 Ky. 332; Cox v. Garehert's Trustee, 148 Ky. 418; Guthrie's Trustee v. Akins, 157 Ky. 651; First National Bank v. Lee, 66 S. W. 413. Applying this rule to the judgment entered in the lower court, giving absolutely to the widow the increase in the price on the cattle that accrued after the death of her husband and before the cattle were sold, it is manifest that the chancellor erred to the prejudice of appellants, and to this extent the judment is reversed with instructions to enter a judgment giving to the life tenant only the income or return from the cattle or the sum realized from their sale but not any part of the corpus. In all other respects the judgment is affirmed.

Judgment affirmed in part upon the original appeal and reversed in part upon the cross-appeal.