## Cushenberry, et al. v. Neely, Executor, et al.

(Decided November 12, 1926.)

### Appeal from Simpson Circuit Court.

1.  Wills.—Devise in words, "It is my will and desire that my wife have, use, control, manage, and enjoy during her natural life, all the residue and remainder of my estate," held to give her life estate, and as such absolute ownership of entire income unconsumed, part of which passed to her heirs.·

2.  Appeal and Error—Finding of Master Commissioner and Chancellor, Determining Amount of Bequest, Cannot be Disturbed, Unless Against Preponderance of Testimony.—Master commissioner's finding, determining amount of personalty bequeathed wife, and decision of chancellor overruling exceptions, cannot be disturbed, unless against preponderance of evidence.

THOMAS, THOMAS & LOGAN for appellants.

RODES & HARLAN and JOHN S. MILLIKEN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

This appeal involves only two questions: (1), the nature, character and extent of the interest that E. V. Cushenberry, now deceased, devised and bequeathed to his wife, Isabella Cushenberry, in his estate of which he died seized and possessed in 1911, and (2), the amount of personal property he left at the time of his death and which he bequeathed by his will. The first one involves the interpretation of certain language of the will of the testator and is purely a legal question, while the second one is to be determined from the evidence heard on the trial and, therefore, presents only a question of fact.

The testator, E. V. Cushenberry, and his wife, Isabella Cushenberry, had no children but they each had collateral heirs and she was made executrix of the will of her husband with a request therein that she make no inventory of his estate and not be required to make settlements with the county court or to execute bond. He owned one valuable productive farm in Simpson county containing about 100 acres and another small one in Logan county containing about 35 acres, while the remainder of his estate consisted of personal property, the

larger portion of which was invested in notes, stocks and bonds. Mrs. Cushenberry immediately took charge of the estate of her husband upon the probating of his will and managed and controlled it until her death on December 6, 1924. At the time of his death she owned in her individual right a small house and lot, which she afterwards sold for $1,500.00, and $2,000.00 in money. During the 13 years that she survived her husband she did not keep a separate account of his estate from that of her own or of the income of both, and when she died she left personal property consisting of cash and similar investments to those of her husband amounting in the aggregate to something near twice as much as the amount he left, and this controversy is between his heirs and the heirs and devises of his wife, the latter claiming that the wife took a life interest in her husband's property under his will and thereby became entitled to have and receive absolutely the income therefrom and which passed under her will as a part of her estate; while the former contends that under the will of E. V. Cushenberry his widow took of the income from his estate only what was necessary for her comfortable maintenance and support, and that the excess above the latter amount became a part of the corpus of her husband's estate and passed as directed by him in his will after the death of his wife; which brings us to a consideration of the first question above, which we will now proceed to determine.

1.   The pertinent language of the will says: "After the payment of my just debts, which will be few, and my burial expenses, it is my will and desire that my beloved wife, Isabell Cushenberry, have, use, control, manage and enjoy during her natural life, all the residue and remainder of my estate, real, personal and mixed and at her death said estate shall be divided into two parts in the ratio of one to two," &c. The will then provides that one part or one-third of the remainder of his estate shall go to the relatives of his wife as she may desire, and the other two-thirds "shall go and pass to my relatives in the same manner and in the same proportion it would have gone under the laws of Kentucky had I made no will." It is conceded by learned counsel for appellants representing the heirs of the husband that if the language of E. V. Cushenberry's will is sufficient to vest his wife with a life estate in his property she would then be entitled absolutely to the income therefrom and not be

limited in her right therein to a mere maintenance and support. The concession of counsel as to the right of the life tenant to the income of the property is undoubtedly the law, as will be seen from the text in 16 Cyc., pages 617, 619, 621, 622; 17 R. C. L., pages 628, sec. 18, and the cases of Davison v. Davison, 149 Ky. 571; Hornsby v. Hornsby, 185 Ky. 847; Trustees of Presbyterian Church v. Mize, 181 Ky. 567; Lyne v. Cleveland's Admr., 1 Bush 80; and Rice v. Fields, 192 Ky. 161.

Coming now to a consideration of the inserted language of E. V. Cushenberry's will, it will be seen that he expresses therein his "will and desire" for his wife to "have, use, control, manage and enjoy during her natural life" all of the remainder of his estate after the payment of debts and funeral expenses. She was to have it, use it, control it, manage it and enjoy it during her natural life. There is absolutely nothing in the language to even remotely indicate that it was the intention of the testator to make her a mere manager or custodian of the property for the purpose of getting only a living use of it. She was given the broadest powers over the control, management, and enjoyment of the property during her life, and it is our conclusion that her authority or rights would not be enlarged had the testator used the word "give" instead of "have," and the other ones found in the will measuring her dominion over the property. Indeed, Mr. Webster, in defining the word "have" as used in the law in similar connections, says: "To own is to have or hold as property," and he says that it is a synonym of *hold, own* and *possess.* The text in 21 Cyc. 362, in defining the word, says: "To hold, own, possess, &c., as an appurtenance property or attribute," and the word was construed as conveying ownership by the Supreme Court of Iowa in the case of Scott v. Scott, 134 Iowa 239, 23 L. R. A. (N. S.) 712, 126 Amer. St. Rep. 277. Suppose, by way of illustration, that a testator would say, "I want my son John to have my watch." Would it be contended by anyone that the word "have" as so used would vest in John any less estate in the devise than if the testator had expressly given the watch to his son? As a matter of fact, such language is frequently used in wills, and it has never been held that by the omission of the word "give" and the use of the word "have" the testator transmitted a lesser estate to his devisee for and during the time for

which it was limited, *i. e.,* a fee or an absolute estate if a shorter one was not carved but equally absolute for the limited period if one was carved.

But it is insisted that the testator by employing the term "my estate" in the inserted excerpt, and in other parts of his will, clearly indicated that he desired his wife to augment his estate by accumulations from income and for the remainder clause to operate on such augmented estate. However, this court in the Lyne case, *supra* (1 Bush 80), expressly held to the contrary and in the course of the opinion said: " 'All of my estate' literally imports that only which he owned at his death and devised. Emma's usufructuary right to it being unlimited by the will, the profits of her use were, necessarily, her absolute property, and no portion of the testator's estate; and, consequently, 'all of my (his) estate,' without explanation or specification, did not include any of the profits. And if, as argued by the able counsel of the appellants, he had intended to include in his estate all the profits not consumed in the unrestricted use, we must presume that such a purpose would have been expressed or in some way indicated." Following that interpretation, and in the absence of anything else indicating to the contrary, the proper conclusion would be that the words "my estate," as appearing in Cushenberry's will, would apply only to that which he left at the time of his death and not to any augmentations in the way of income realized by the life tenant during the existence of her particular estate. Neither do we agree with learned counsel that other language in the will which he quotes and relies on has the effect to limit the right of Mrs. Cushenberry in the income of her husband's estate to a mere maintenance and support. He evidently knew that his wife was economical, industrious and above an average business woman and that with such management the income from his estate would not be consumed by her in her maintenance and support, and if he had intended that she should be so confined in the use of the income it would have been an easy matter to have so expressed himself in unmistakable language. In the absence of some such expression found in his will we can not believe that it was his intention to capitalize his wife's known economy, industry and business ability to the enhancement of the interest of the remaindermen. We, therefore, conclude that Mrs. Cushenberry became the absolute owner

of all of the income of her husband's estate, which passed under her will, and that the court properly so adjudged.

2. The case was referred to the master commissioner to ascertain the amount of the husband's estate at the time of his death, excluding the two farms. He made a report thereon after taking proof, a part of which consisted of a list of the husband's property, found in the private papers of the wife and made by her; and he reported that the estate outside of the real estate amounted in the neighborhood of $30,000.00. Exceptions were filed by appellants to that report, which the court overruled. We thus have the finding of the commissioner as well as the chancellor on this issue of fact, which, under the rule of practice in this court, we would be unauthorized to disturb, unless such finding was against the preponderance of the evidence, but which we conclude is not true. It could serve no useful purpose to recite the testimony, and we will content ourselves with saying that the undisputed proof shows that the income from the farms alone would amount to between $800.00 and $1,000.00 annually; that the wife kept her small estate as well as the incorporeal portion of her husband's estate, amounting to about $30,000.00, so invested as to realize a reasonable and constant income, and we are not prepared to say that with her economical and industrious habits she did not realize during the 13 years of her life tenancy the amount of property that the court adjudged was a part of her property as the owner of the income from her husband's estate from the time of his death to that of hers.

We, therefore, find no error in the judgment, and it is accordingly affirmed.