Chester **RHODUS** et al., Appellants,

v.

**J. B. PROCTOR**, Executor of the Estate of Mrs. J. B. (Effie) Proctor, et al., Appellees.

**J. B. PROCTOR**, Executor of the Estate of Mrs. J. B. (Effie) Proctor, Cross-Appellant,

v.

Chester **RHODUS** et al., Cross-Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1968.

Eugene S. Wiggins, Richmond, for appellants.

John M. Coy, Coy & Coy, Richmond, for appellees.

EDWARD P. HILL, Judge.

Our question is the construction of the will of W. Green Rhodus.

Testator died December 6, 1956. His widow, Effie Rhodus, and their five children, the appellants herein, survived.

The pertinent parts of the will are quoted:

"2nd I bequeath to my wife, Effie Rhodus, all my real and personal property I may die possessing, to use and occupy as long as she lives and remains my widow.

"3rd At her death, or if she remarries, my real estate shall be sold and divided equally among my heirs, namely, William Rhodus, Charles Rhodus, Chester Rhodus, Emma May Salters, and John Dee Rhodus."

Chester Rhodus, executor, promptly surrendered to the widow $4,535.01 in money. By agreement of all the parties, out of this amount the sum of $500 was advanced to John Rhodus. No controversy exists in regard to this advancement, and John should be charged with same on final settlement.

On September 19, 1962, the widow Effie Rhodus, married J. B. Proctor. On November 30, 1962, the five children instituted this declaratory judgment proceeding. They demanded that their title to the real estate be quieted and the possession thereof. They also claimed they were entitled to recover $4,544.51 then on deposit in the name of the widow.

The widow and her then husband conceded that the children were entitled to the real estate but contested their right to any of the personalty, claiming all personalty, or in the alternative, claiming that she was entitled to one-half thereof as intestate property.

During the pendency of the action, and on November 22, 1964, Effie died. J. B. Proctor was substituted as a party defendant.

The final judgment appealed from held that the children were entitled to the real estate; that J. B. Proctor be paid $2,159.16 out of the personal estate for medical services rendered to Effie after her second marriage. The judgment also concluded that inasmuch as Effie spent her Social Security money for her own support and died not encroaching upon the corpus of the estate, she was entitled to a "credit against the corpus of the estate." The widow was adjudged entitled to $472.84, representing her share of a tobacco crop; $606.96, accrued interest on savings account; $79.36, from profit on cattle bought and sold by her; and an arbitrary sum of $1,000, found by the chancellor for "reimbursement of the amount the said Effie Rhodus was entitled to use for her maintenance and support during her lifetime but did not so use."

The judgment found that after allowing for the above deductions, or credits, there remained $2,229.05, which was adjudged the property of the children.

It is the position of appellants that the widow acquired a widowhood estate in the personalty; that the remainder interest in

the personalty passed to the heirs as intestate property; and that the widow not having renounced the will, as she had a right to do under KRS 392.080, and having accepted the benefits under the will her estate is not entitled to share in intestate property.

Appellants also question the separate items allowed in the judgment and contend cost should have been adjudged against the personal representative of the estate.

Appellees argue that the will devised to the widow the "fee simple" or absolute ownership of the personalty.

■ We first place a construction on the will. Of course the cardinal rule in the construction of a will is not what the testator intended, but what he intended from what he said. See Huffman v. Chasteen, 307 Ky. 1, 209 S.W.2d 705.

■ We are also confronted with case law holding that where "in cases of doubt and where the employed language may be interpreted so as to create intestacy as to a part of the estate, or may appropriately be construed as disposing of all of it, the latter interpretation will be adopted, upon the ground that it is presumed that, when the testator goes through the formality of executing his will, he thereby intends to make a complete disposition of the property and to die intestate as to none of it." Cf. Carpenter v. Wells' Administrator, Ky., 272 S.W.2d 659, 660.

■ The provisions of testator's will, above quoted, clearly vested in the widow a widowhood estate in both real and personal property. Nowhere in the will is there any further reference to personalty. Although the testator may have intended to bequeath the remainder interest in his personalty to his children, he did not do so. We are not permitted to speculate; therefore, we must conclude that the remainder in the personalty reverted as intestate property. Ray v. Ray, 298 Ky. 162, 182 S.W.2d 664 (1944). The division of personalty must be made according to laws of descent and distribution under Chapter 392 of Kentucky Revised Statutes.

■ The question arises now as to what interest, if any, the estate of the widow took in the personalty. Her widowhood estate terminated when she remarried. She did not die for some years after her remarriage, so does her estate share in the distribution of testator's estate in intestate personalty? We conclude it does not. True, her estate shared at common law, but in Voss v. Stortz, 177 Ky. 541, 197 S.W. 964, this court held that by the enactment of KRS 392.020 and 392.080 (formerly 1404) the common law rule was abolished.

■ In the late case of Hammond v. McReady, Ky., 355 S.W.2d 674, at 675 (1962), in answering practically the identical question we have in the instant case, this court said:

"The conclusive answer to this contention is found in the established rule of law that, in the absence of a contrary intent affirmatively appearing in the will, a widow who accepts a devise or bequest under her husband's will cannot claim the rights of a surviving spouse in any undevised property of the husband. See KRS 392.080; Huhlein v. Huhlein, 87 Ky. 247, 8 S.W. 260; Bayes v. Howes, 113 Ky. 465, 68 S.W. 449; Smith v. Perkins, 148 Ky. 387, 146 S.W. 758; Ray v. Ray, 298 Ky. 162, 182 S.W.2d 664; Hedden v. Hedden, Ky., 312 S.W.2d 891. Not having renounced her husband's will, Lelia had no claim to his undevised property."

■ There remain to be considered certain items of credit given the widow in the judgment. First, we take the item of $79.36, representing profit on cattle bought and sold by the widow. She was not entitled to any "increase in value" of the cattle left her by the testator. Cf. Hornsby v. Hornsby, 185 Ky. 847, 216 S.W. 88. There were no cattle left her however. She was entitled to the profit made on her use of the money. Cf. Lilly v. Connely,

Ky., 266 S.W.2d 102. She was likewise entitled to accumulated interest on the savings account to the date of her remarriage. Lilly v. Connely, supra. The widow was entitled, absolutely, to the proceeds of the tobacco crop in the amount of $472.84; Redmon v. Bedford, 80 Ky. 13, 3 Ky.Law Rep. 511 (1882).

■ We think the chancellor was in error in allowing the widow $1,000 out of the estate, representing an amount to which "she was entitled to use for her maintenance and support," but which she did not use. We find no authority for the allowance of this amount.

The widow might have used the corpus of personalty left her during her widowhood if it was necessary for her support and maintenance. But, if she were frugal, as the testator probably knew her to be from his years of association with her, the greater estate she left the remaindermen— the more admirably the trust was performed.

■ Appellants contend on this appeal that "the lower court erroneously failed to have the widow account to the heirs for the $335.82 in the Peoples Bank, which she disposed of." The judgment appealed from makes no reference to this item. Appellants should have insisted upon some specific ruling by the chancellor if they hoped to have a review of the question on appeal. There is evidence on the part of one of the appellants that this sum was surrendered to the widow by agreement of all the children. We conclude the children are in no position to claim any of this amount.

■ Finally we come to the credit of $2,159.16 allowed appellee Proctor to cover the cost of medical care rendered Effie during her terminal illness. The obligation to pay the medical expenses is upon the husband, Proctor. 41 C.J.S. Husband and Wife § 15; State v. Kelly, 100 Conn. 727, 729, 125 A. 95 (1924); and Harris v. Leslie, 195 S.C. 526, 12 S.E.2d 538 (1940). Effie's estate terminated the day she married Proctor. 31 C.J.S. Estates § 65, p. 126; KRS 404.040; and Central Hospital of Kentucky v. Powell, 301 Ky. 808, 193 S.W. 2d 456. The allowance of this amount to Proctor was improper.

Appellants question the correctness of the judgment's charging the costs against the estate of the testator. In view of the results herein reached, we direct that costs be assessed against the estate of the widow.

The judgment is affirmed in part and reversed in part on both the direct-appeal and cross-appeal with direction to enter judgment in conformity with this opinion.

All concur.