Pearson, J.
 

 The injunction ought to have been continued until the hearing.
 

 The land in dispute was conveyed to one Penman in 1835. Penman, in 1836, conveyd to J. R. S, Harris, 01-
 
 *220
 
 cott and Alexander, three of the defendants, in trust for the Anglo-American gold mining association and such persons as the said association should appoint. In 1837, Henry Blundell, and Henry Heathern and James Mag-nus, three of the directors of the said association, conveyed to Wilson and Henderson, two of the plaintiffs, in trust to sell for the payment of debts, and, in pursuance of the deed, directed the said trustees to hold in trust for the said Wilson and Henderson. Afterwards, the said Wilson and Henderson conveyed to Irwin and Elms, two of the plaintiffs, who took possession by their tenants.
 

 In 1838, Morrison and William A. Harrris, two of the defendants, caused the land to be sold by the sheriff, under an execution in theirfavor against Penman, became the purchasers, and took a deed from the sheriff.
 

 In 1840, an action of ejectment was instituted against the tenant of Irwin and Elms. The declaration contained one count on the demise of Morrison and W. A. Harris, and a second count on the demise of J. B. S. Harris, Olcott and Alexander, and a recovery was made upon the first count.
 

 The prayer is for a conveyance of the legal title by the defendants J. B. Harris, Olcott and Alexander, and that, the defendants W. A. Harris and Morrison be enjoined from suing out a writ of possession.
 

 The equity of the bill, so far as it relates to the injunction is, that the recovery in the action of ejectment, upon the demise of W. A. Harris and Morrison, was ef« fected by a combination between J. B. S. Harris, Olcott and Alexander, who are trustees for the plaintiffs, and W. A. Harris and Morrison, who claim adversely to them under the sheriff’s deed, by which combination an undue advantage was gained ; for although the defendant in that action could have defeated a recovery upon the demise of W. A. Harris and Morrison, who claimed under a sheriff’s sale in 1838, by shewing that he had con
 
 *221
 
 veyed to the trustees in 1835. yet, as there were two demises, this would necessarily have enabled the plaintiff to recover on the second demise, and thus the present plaintiffs were, in that action, exposed to a cross fire. This is a plain equity, confessed by the defendants.
 

 J. B. S. Harris, the only one of the trustees who has answered, admits, that he and Alexander consented, that that their names should be used, as lessors, in the action of ejectment, which was also to contain a count in the name of W. A. Harris and Morrison, and says, his reason for doing so was for the purpose of securing a large debt, which the association owed him, when he consented to accept the deed of trust, and which is still unpaid; and he insists, that, had a recovery been effected on the demise in his name and that of his co trustees, he would have been entitled, in law and equity, to hold the land to secure the debt. He does not allege, that the debt was mentioned in, or secured by, the deed of trust, but admits that the legal title was received by him and his co trustees, in trust to hold for the association and for such persons as the directors of the said association might direct or appoint. It is a strange idea of equity, for a trustee, because the legal title has been confided to him, to assert a trust in favor of himself. Equity will, under no circumstances, permit a trustee to attempt to secure a debt of his own, not secured by the trust, by forming a combination with one, claiming adversely to those, whose interest he has undertaken to protect; because it is a palpable breach of trust and a direct violation of the confidence reposed in him.
 

 The other two defendants,William A. Harris and Mor. rison, admit, that they united with the trustee in bringing the action of ejectment, but they insist, that as the recovery was effected upon the title, which they set up, as purchasers at a sheriff ’s sale, and not upon the demise of the trustees, they ought to be allowed to take possession,
 
 *222
 
 especially as it is the policy of Courts, both of law and equity, to favor purchasers at sheriff’s sales.
 

 It is the policy of the law to favor purchasers at sheriff’s sales, as against debtors in the executions, whose debts have been paid by the purchasers, but not as against third persons; particularly where these have the equitable estate, and the purchasers have effected a recovery at law, by an iniquitous combination with the trustees, whose duty required them to give protection, instead of taking sides with their adversaries. '
 

 If these defendants had impeached the deed, made by Penman to the trustees, upon the ground of an intent to defraud his creditors, it might probably have avoided them, at least upon the hearing, as the recovery would then have been effected, upon the strength of their own title as purchasers, and not by force of the combination; but there is no allegation of the kind, and the bill avers, that Penman purchased as the agent and with the funds of the association, the
 
 cestuis que trust.
 
 That they were the equitable owners, before the conveyance by Penman to the trustees, is not denied or called in question.
 

 The objection, that copies of the exhibits, referred to in the bill, were not annexed to the copies served, is not available on the motion now before us. It would have been a good reason for refusing to answer, but the ex* hibts are sent up with the transcript. The deeds are duly proven and registered, and the motion was heard, in the Court below, upon the bill, answers and
 
 exhibits filed.
 

 The third position, tafcen by the defendants, W. A. Harris and Morrison, that they should be allowed to take possession, because there is no allegation, that the mine will be endangered, or that they are not fully able to pay the rents and profits of the land and all the gold they may take from the mine, is also untenable. These allegations are not necessary against parties, who have no title, (for; in 1838, Penman had no interest in the land, either legal
 
 *223
 
 or equitable,) and who effected their recovery at law by inducing trustees to commit a breach of trust, and to form a combination against their
 
 cestuis que trust.
 

 The interlocutory decree was right.
 

 Per Curiam.
 

 Ordered to be certified accordingly.