Pearson, J.
 

 Thomas Motley, Sen., died in 1631. leaving a large real and personal estate. By his will, after giving to his other children (who are not parties to this suit,) a considerable amount of property, he gave to his wife, during her life, the place on which he lived, nine valuable ne-groes, stock, wagon. &c.; at her death to be equally divided between his three sons, the plaintiff and the two defendants, who were appointed his executors. The widow died in 1842, and the defendants took possession of the ne-groes and sold most of them, and also such of the stock, &c. as remained on hand.
 

 The bill is filed for an account of the negroes and their increase, and the stock, &c. An account has been taken, to which both parties have filed exceptions.
 

 The 1st, 2nd, 3rd and 10th exceptions on the part of the plaintiff are withdrawn.
 

 The 4th, 5th, 7th and 9th exceptions are allowed. They all apply to credits, which are given to the defendant, Ransom, on account of alleged advances made
 
 by
 
 him for the widow and rest upon the same ground. The plaintiffs and the defendants, soon after the death of their father, agreed, that, as the widow, who was their mother, was very old, and could not manage the property given to her for life, the defendant, Ransom, should act as her agent, and if the profits of the property were not sufficient for her comfortable support, the three would pay a rateable part of such fur - ther sums, as might'be necessary for that purpose. Under this agreement, the master allowed the credits claimed by the defendant, Ransom, which are excepted to. We think the exceptions are well founded, because the defendant,
 
 *213
 
 Ransom, has not set forth any account shewing what were the profits of the property, which he had undertaken to manage, and how such profits were disposed'of. Without such an account, it is impossible to tell, whether the sums paid by him were paid out of the profits of the property or out of his own money. There was a large amount of property. By one of his exceptions, he claims ¡$ 10.0 a year for acting as agent. It was his duty to keep an account to show how it appeared, that the profits were not sufficient; and he did not. entitle himself to a credit, simply by shewing that, at sundry times, he had paid debts contracted by his mother, or that she had, on one occasion, given him her note for $99 50, which is one of the items excepted to. The mere fact of his paying debts amounts to nothing. That he was expected to do as agent; and the important, question, with whose money did he pay it ? is left unanswered, and there was no ground, in an account with the plaintiff, to assume that the money was his own, simply from the ' fact of payment;
 
 Downey
 
 v
 
 Bullock,
 
 7 Ire. Eq. 102.
 

 The 6th exception is also allowed. It is a credit of $9, 90, for costs paid by the defendant, Ransom, as one of the executors, incurred in a suit by the executors against a debtor of the estate. The objection to this voucher is, that the present account does not involve a general settlement of the estate, but is confined to a settlement of that portion of it, in which the widow had a life estate, the parties not insisting upon a general settlement, for the reason, probably, that, after the death of the testator, the whole estate was satisfactorily disposed of, and all that remained open, at the death of the widow, when this bill was filed, was the part to be divided among the plaintiff and the defendants. But however that may be, it was improper to allow this single-voucher, for, without a general settlement, it could not be ascertained, whether the estate was in arrear to the defendant, Ransom, or not;
 
 Ward
 
 v
 
 Turner,
 
 7 Ire. Eq. 73.
 

 
 *214
 
 The first exception, on the part of the defendant, Ransom, is over-ruled. The testator gives to each of his children the property, “which he hadpwi
 
 -into their possession
 
 and the exception is, that the defendant ought not to have boon charged with the value of a negro, named Anthony. The facts are: that the defendant was a young unmarried man living with
 
 his
 
 father; at the time of
 
 his
 
 death, was off at market accompanied by Anthony ; and that he had frequently before gone such trips, taking Anthony with him, but he never treated the slave as his- property nor set up any claim to him previously to his father’s death.' The master very properly came to the conclusion, that this was not such a possession, as would vest the title under this clause of the will. The fact, that Anthony was one of the negroes given to the widow for life, puts the matter beyond all question. Ho is not charged with the hire of this negro during the life of the widow. This hire formed a part of the profits unaccounted for.
 

 The second exception is over-ruled. It is, that the defendant, Ransom, ought not to be charged with the value of the slaves, Sam, Ben and Nancy, because these slaves had been' conveyed by
 
 the
 
 widow
 
 to the defendant, Ransom,
 
 by a bill of sale, professing to pass the absolute estate, and after her death, the plaintiff had, in consideration that the defendant, Ransom, would agree to have the negro Anthony sold, as a part of the fund, subject to distribution, relinquished and transferred all of his interest and claim in and to the said three slaves to the defendant, Ransom ; and so “ it is insisted, that if these slaves did not become his absolute property by the bill of sale of the widow, yet, so far as the plaintiff is concerned, they were by his deed made the property of the defendant, Ransom, for a valuable and sufficient consideration.” Upon the first exception it is decided, that Anthony did not belong to the defendant, Ransom, but formed a part of the fund subject to the distribution. So, the agreement, that he should bo sold as a part
 
 *215
 
 of the fund, did not form “ a valuable and sufficient consideration” for the transfer of the plaintiff’s interest in the three slaves. This point is settled by the case of
 
 Turnage
 
 v.
 
 Turnage, 7
 
 Ire. Eq. 127.
 

 The 3d and 4th exceptions are withdrawn.
 

 The 5th exception is over-ruled. It is, that the defén-dant, Ransom, was not allowed the sum of §700, for his services in attending to the business oí the widow, his mother, from 1833 to 1840 It was proper to refuse this allowance. The defendant asked for it with a bad grace. He renders no account, and the property was so badly managed as scarcely to yield a support for his aged mother —in fact he says it did not yield enough. His position is that of a bad agent, who makes no profits, renders no accounts and sets up a claim
 
 for compensation for his services.
 

 The 6th exception is also.'over-ruled. It is, that, as the boy Toney was exchanged by the defendant, Ransom, for the girl Linda and $ 100 in' cash, he should be charged with the value of Toney and ought not to be'charged with the #100 and interest and the increased value of Linda. The principle is well settled, that, if an agent or trustee converts property, the principal or
 
 cestui que trust
 
 may, at his election, ratify the transaction and claim whatever profit is made by it. This is obviously right and removes all inducement to attempt a speculation with funds not their own.
 

 There must be a reference to E. B. Freeman, Esquire,
 
 to
 
 reform the account.
 

 Per Curiam. Decree accordingly.