Bohle *v.* Hasselbroch.

JOHN C. BOHLE et al., appellants,

*v.*

DIEDRICH HASSELBROCH, respondent.

[Filed March 3d, 1902.]

A trustee under a will, in disregard of the testator's directions, used trust funds in her hands, together with her own funds, to buy real estate, and took the title in her own name; the amount of trust funds so used could not be precisely ascertained, but it exceeded one-half of the price paid at the time of purchase.—*Held*, that the *cestuis que trust* were entitled in equity to elect whether they would claim a charge upon the real estate for the amount of trust funds so invested, or would claim the real estate itself as owners, subject to a charge for the trustee's own money so used; and that, in endeavoring to ascertain how much trust money and how much of the trustee's own money had been invested in the property, every reasonable intendment should be made against the trustee, through whose default the truth had become obscure.

On appeal from a decree advised by Vice-Chancellor Stevens, whose opinion is reported in *16 Dick. Ch. Rep. 470.*

Mr. *Charles W. Parker,* for the appellants.

Mr. *J. W. Rufus Besson,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

Anton L. Bohle, who died in 1863, leaving a widow and four children, by his will appointed his wife, Anna, his executrix and

gave her all his property in trust for the maintenance of herself and his children during her life, and gave it after her death to his children. The will directed the trustee to keep the property invested "on good first bonds and mortgages of real estate." In August, 1864, the widow married Diedrich Hasselbroch, by whom she afterwards had three children. In January, 1868, she purchased two plots of land in Hoboken, taking title thereto in her own name. The purchase-price of these lots was $14,700, but as they were encumbered for $2,000, only $12,700 was to be paid in cash. Of this sum more than one-half, but exactly how much cannot be ascertained, was paid with money which Mrs. Hasselbroch held in trust under Mr. Bohle's will. At that time Mr. Bohle's children were all minors, living with their mother and stepfather. In December, 1898, Mrs. Hasselbroch died, and by her will devised the Hoboken lots to the three surviving children of Mr. Bohle, who now own the interest of their deceased sister, and are in possession of the property. Mr. Hasselbroch having brought an action of ejectment against these children, claiming that he was entitled to the possession of the property as tenant by the curtesy of his wife's fee, they filed the present bill to restrain that suit, on the ground that in equity their mother was only tenant for life and they were owners of the fee, because of the improper use of the trust funds in the purchase. The chancellor's decree denied this relief, but adjudged that the complainants were entitled to a lien on the property, prior to the husband's curtesy, for so much trust money as was shown to have been used in the purchase, viz., $6,423, and interest since Mrs. Hasselbroch's death, less rents and profits. From this decree the complainants appeal.

It is clear that Mrs. Hasselbroch committed a breach of the trust, when she used the trust funds in buying real estate, and took the title to herself without providing any bond and mortgage as a first lien in favor of the trust estate, as directed by the will of her deceased husband; and the question is, what equitable situation was thereby created.

Several settled doctrines of courts of equity are pertinent to this inquiry.

It is a fundamental principle in regard to trust estates that

the trustee shall derive to himself no gain, benefit or advantage by the use of the trust funds; whatever of profit may be made shall belong to and become parcel of the trust estate. *Mc-Knight's Executor* v. *Walsh, 9 C. E. Gr. 498.* An outgrowth of this principle is that, as between *cestui que trust* and trustee and all persons claiming under the trustee otherwise than by purchase for valuable consideration without notice, all property belonging to the trust, however much it may be changed or altered in its nature or character, continues to be subject to or affected by the trust. *Pennell* v. *Deffell, 4 De G. M. & G. 372, 388.* As a concomitant of the rule just stated, and to effectuate fully the fundamental principle, another rule exists, that, when the trustee has improperly changed the form of the estate, the *cestuis que trust* may elect whether they will accept the estate in its new form or will hold the trustee responsible for it in its original condition. *Ferris* v. *Van Vechten, 73 N. Y. 113.* If the improper conversion turns out to be advantageous, they may adopt it and take the profit; if it results in loss, they may insist on having an equivalent for the estate as it was before the change; and when the *cestuis que trust* are infants, the court will deal with the matter as it shall consider best for their interest. *Holcomb* v. *Executor of Holcomb, 3. Stock. 281.* This right of election by the *cestuis que trust* is upheld by courts of equity in many cases where there has been misconduct on the part of the trustee, as may be seen by reference to *Fox* v. *Mackreth, 1 Lead. Cas. Eq. *115,* and has been fully approved by this court. *Mulford* v. *Bowen, 1 Stock. 797; Stewart* v. *Lehigh Valley Railroad Co., 9 Vr. 505.* It is enforced in cases like the present, for if a trustee purchases property with trust funds in his hands, and takes title in his own name and for his own benefit, he will, at the option of the *cestuis que trust,* be declared to hold it in trust for them. *Durling* v. *Hammar, 5 C. E. Gr. 220; Story Eq. Jur.* §§ *1260, 1262.* And if, in such a purchase, he has mixed up moneys of his own with the trust funds, a trust will still result to the *cestuis que trust* at their option; and the burden will be on the trustee to show the amount of his own funds used in the purchase, and so far as he fails to make that distinction the court holds the property

bound by the trust. *Russell* v. *Jackson, 10 Hare 204, 213; In re Pumfrey, L. R. 22 Ch. Div. 255; Perry Trusts § 128; 2 Pom. Eq. Jur. § 1076 (2)*.

In accordance with these doctrines we think that the complainants, when their right to the possession of the trust estate matured by the death of their mother, were entitled, upon showing that the trust funds had formed a considerable part of the purchase-money by which their mother had acquired title to the Hoboken lots, to elect whether they would claim a lien upon the lots for the amount of trust funds used in the purchase, or would claim the lots, subject to be charged, in favor of the personal representatives of their mother, with so much of the purchase-money as consisted of her own funds, and that, in endeavoring to ascertain how much was trust money and how much was the trustee's own, every reasonable intendment should be made against the trustee through whose fault the truth had become obscure.

Since the complainants, being in possession of the lots, have filed their bill in equity to have it decreed that by their trustee's purchase they became owners of the fee in remainder after their mother's life estate, they have thereby elected to take the real estate in lieu of the trust money invested therein, and to hold it charged only with their mother's own money so invested. Such a charge gives the husband no right to maintain ejectment, and consequently the complainants are entitled to a decree restraining his suit.

The present proceedings are not adapted to the ascertainment either of the amount of the charge or of the persons entitled to enforce it.

Let the decree appealed from be reversed, and a decree be entered as above indicated.

*For reversal*—The Chief-Justice, Dixon, Garrison, Collins, Fort, Garretson, Hendrickson, Pitney, Adams, Vredenburgh, Voorhees, Vroom—12.

*For affirmance*—None.