EDGECOMBE BANK & TRUST COMPANY, ADMINISTRATOR, D. B. N., C. T. A., OF THE ESTATE OF ALICE LEE JOYNER, v. MURIEL J. BARRETT, A WIDOW, MARY LEE J. DAUGHTRIDGE AND HUSBAND, W. H. DAUGH-TRIDGE, ANDREW JOYNER, JR., AND WIFE PEARLE A. JOYNER, ANDREW JOYNER, JR., TRUSTEE OF EDITH HELEN JOYNER, AN INCOMPETENT, EDITH HELEN JOYNER, AN INCOMPETENT, EMILY J. THIGPEN AND HUSBAND PERCY L. THIGPEN, ARCHIE B. JOYNER, JR., AND WIFE, ALISIA G. JOYNER, AND CONNIE THIGPEN LINDE.

(Filed 25 November, 1953.)

**1. Trusts § 5d—**

Ordinarily, property impressed with a trust may be followed through all changes in its state and form, and the beneficial owner may assert title thereto, except as against an innocent purchaser for value without notice, so long as the proceeds or product of the initial trust property may be traced and substantially identified.

**2. Same—**

The rule of trust pursuit is based upon a continuation of ownership in the *cestuis que trustent* and not on the theory of damages or compensation for the loss of the property.

**3. Same—**

Ordinarily, the right of the beneficial owner to follow the trust property through changes of state and form embraces not only the trust property and its proceeds, but also any increase in value or profit realized from the management of the trust estate, since equity will not permit a fiduciary to make a profit out of funds committed to his custody.

**4. Same—**

As a general rule, the mere tracing of trust property or funds into the general estate of a trustee is not a sufficient identification of the trust property within the rule of trust pursuit, but when the trustee has no individual property of appreciable value, or the trust property may be identified and segregated from his general estate, the rule of trust pursuit is applicable.

**5. Trusts § 19a—**

Ordinarily, increases in the value of real estate and of securities, as well as profits made by purchase and sale of property, are *corpus* increments which go to the ultimate beneficiaries and not the life beneficiary of the trust.

**6. Estoppel § 6c—**

The mere fact that beneficiaries of a trust who are *sui juris* acquiesce in permitting the trustee to invest and reinvest the trust funds without sanction or approval of a court of equity does not estop them from invoking the rule of trust pursuit, it not being made to appear that anyone was misled to his hurt by reliance on the silence or acquiescence of the beneficiaries.

**7. Trusts § 5d—**

Findings of fact to the effect that the trustee, who was also life bene-
ficiary of the trust, had only a specified piece of real property when she
received the trust estate, that she died possessed of this realty, and that
all the remainder of the property left by her represented investment and
reinvestment of the trust funds, *is held* to require the application of the
rule of trust pursuit, and an adjudication that the beneficiaries of the trust
are the owners of the property acquired with funds of the trust.

APPEAL by defendants (except Muriel J. Barrett) from *Parker (Joseph
W.), J.,* at June Term, 1953, of EDGECOMBE.

Civil action by Edgecombe Bank & Trust Company, Administrator,
*d.b.n., c.t.a.,* of the Estate of Alice Lee Joyner, for advice and instruction.

Alice Lee Joyner died 18 November, 1948, leaving a last will and
testament which has been admitted to probate in the office of the Clerk
of the Superior Court of Edgecombe County.

The testatrix was survived by the following five children and one
grandchild, her heirs at law and next of kin: Mary Lee Joyner Daugh-
tridge, Muriel J. Barrett, Emily Joyner Thigpen, Andrew Joyner, Jr.,
and Edith Helen Joyner, children; and Archie Braswell Joyner, Jr.,
sole heir at law and next of kin of Archie Braswell Joyner, a deceased
son, who died intestate in 1923.

Alice Lee Joyner was a daughter of Archelaus Braswell, who died in
Edgecombe County in 1903, leaving her by the terms of his will a farm
located in Pitt County "to have and to hold during her natural life and
after her death, to go to her issue and their heirs."

On 18 June, 1912, an *ex parte* special proceeding was instituted in the
Superior Court of Pitt County by Alice Lee Joyner and all her children
(of whom three were minors represented by next friend) in which author-
ity was sought to sell at private sale for reinvestment the farm devised
to Alice Lee Joyner for life by her father. It is alleged in paragraph 10
of the petition that the petitioners desire that the Trustee to be named by
the court to receive the purchase price of the land "shall hold the same
in like manner as said land is now held; . . ." Judgment was entered
by the Clerk, approved by the Resident Judge of the Superior Court,
authorizing private sale of the land at the price of $17,500. Alice Lee
Joyner was appointed Trustee to receive and handle the fund, and the
judgment directs that the purchase price "be held upon the same terms
and conditions that the said land is now held; that is to say, for the fund
to be held intact during the life of Mrs. Alice Lee Joyner, and after her
death distributed among the remaindermen as their interest may appear."

On 10 August, 1912, by order of the Superior Court of Pitt County,
Alice Lee Joyner was authorized to remove the trust fund to the County
of Guilford, where she and her family resided; and it was directed that

all further reports of the Trustee and all subsequent orders and decrees concerning the investment, custody, and disposition of the fund be made and entered in the Superior Court of Guilford County.

Alice Lee Joyner collected and received the purchase money from the sale of the farm amounting to $17,500, less court costs and attorney fees amounting to $118.20, leaving a net sum of $17,381.80. The investments of this fund made by the Trustee during the early years of her trusteeship were in the nature of purchases of real estate located in Greensboro, the titles to which were held in the name of "Alice Lee Joyner, Trustee."

On 1 October, 1917, Alice Lee Joyner, Trustee, instituted a special proceeding in the Superior Court of Guilford County requesting leave of the court to substitute for her then existing fidelity bond with corporate surety a bond in like amount with personal surety. In her petition it is stated: "Your petitioner would further certify that the entire amount received from the sale of lands in Pitt County, by authority and direction of the powers conferred in her as trustee, have been transferred to Guilford County and have been invested to good advantage and that the fund as invested now represents a valuation of more than the original amount derived from said sale." And in support of her petition she filed with the Clerk a report of her transactions as Trustee, as follows:

RECEIPTS.

Received from O. L. Joyner...................................................$17,500.00

INVESTMENTS.

| | |
|---|---|
| House and Lot on Blanwood Ave., City of Greensboro—valued at ....................................................... | 5,000.00 |
| House and Lot on Blanwood Ave., City of Greensboro—valued at ....................................................... | 5,000.00 |
| House and Lot on Leftwich Street, City of Greensboro—valued at ....................................................... | 5,000.00 |
| Note & Mortgage of V. B. Morgan to A. Lee Joyner, Tr. ....................................................... | 4,350.00 |
| Vacant Lot on Leftwich St., City of Greensboro—value ....................................................... | 2,000.00 |
| | $21,350.00. |

An order was entered by the Clerk of the Superior Court of Guilford County authorizing the Trustee to make the bond substitution as requested. It is in the penal sum of $2,500 and is conditioned upon the faithful accounting by Alice Lee Joyner, Trustee, to her daughter Edith Helen Joyner, incompetent, in respect to the management of the trust

estate. The other children of the Trustee were then of full age and had waived bond for their protection. They signed as sureties the bond given in substitution of the corporate surety bond for the protection of their sister Edith Helen.

No further report of her transactions as Trustee was filed thereafter with the court by Alice Lee Joyner. She continued to purchase vacant lots and stocks and bonds, to build houses, and to sell portions of this property at profits, but the subsequent purchases with the trust funds were made in her name individually.

The only property owned by Alice Lee Joyner, other than household furnishings, at the time of her appointment as Trustee in 1912 was a house and lot at 431 West Gaston Street in the City of Greensboro. This property was conveyed to her in 1902. It was the family residence during the period she resided in Greensboro—until she returned to Edgecombe County in 1934. It was owned by her at the time of her death.

John J. Mason, Vice-President and Trust Officer of Edgecombe Bank & Trust Company, Administrator, as a witness at the trial, described the property left by Alice Lee Joyner and gave his estimate of values as of 5 June, 1953. This inventory and appraisal may be summarized as follows:

House and Lot, W. Gaston Street, Greens-
    boro (former home place) estimated
    value .. ..... .. . ......... ........ .....................$15,000 to $20,000.
House and lot—Leftwich Street, Greens-
    boro, estimated value ...................... ........   8,000 to   10,000.
312 shares Security Life & Trust Company stock
    valued at .. .. ....... .. ...... ..................... ..... ................  51,480.
Total value of other corporate stocks........ ..................   8,151.02
Bank deposits ............................. ........ ..................... ..   4,478.94
Notes and written evidences of debt signed by these
    three children of the testatrix: Andrew W. Joyner,
    Jr., Emily J. Thigpen, and Mary Lee Daughtridge,
    (approximately) ....... .......... . .......................... .......   8,400.
U. S. Government bonds of the following denomina-
    tions and registry: $2,000 in the name of "Alice
    Lee Joyner or Muriel J. Barrett"; $2,000 in the
    name of "Alice Lee Joyner or Emily J. Thigpen";
    and $1,000 in the name of "Alice Lee Joyner or
    Connie Lee Thigpen" (now Connie Lee Thigpen
    Linde—daughter of Emily J. Thigpen)................ .   5,000.

These bonds were not delivered to the plaintiff administrator, but advice is sought respecting their status as possible items of set-off against

the persons whose names appear thereon. Like advice is sought by the Administrator in respect to the notes and evidences of debt signed by the three children of the testatrix.

By the terms of her last will and testament, which was executed 25 October, 1941, the testatrix attempted to dispose of the foregoing property in a manner that would work an unequal distribution among her heirs at law and next of kin, with the inequality being predominantly in favor of the appellee Muriel J. Barrett, to whom she bequeathed the 312 shares of stock in Security Life & Trust Company, valued by Trust Officer Mason at $51,480, so as to give Mrs. Barrett a share of the property worth approximately $60,000, as against distributions to the other heirs at law and next of kin of about $6,000 and less.

The issues of fact raised by the pleadings revolve around these main questions: (1) Whether the property held by Alice Lee Joyner at the time of her death, except the home place in Greensboro, was purchased with funds belonging to the trust. (2) If so, whether the appellants are estopped or precluded from asserting their rights in the property under the doctrine of trust pursuit and the rule of *corpus* increment.

Jury trial was waived by stipulation of the parties, and the trial court, after hearing the evidence offered by the parties, found facts, made conclusions of law, and entered judgment, the gist of which follows:

## FINDINGS OF FACT.

"6." That plaintiff's testate, Alice Lee Joyner, during her life "was entitled to the . . . increment" derived from the investment of the trust funds obtained from the sale of the Pitt County farm, and that such "increment is and does constitute a part of the individual estate of . . . Alice Lee Joyner, and passes under her last will and testament."

"8. That . . . Alice Joyner invested, reinvested, controlled and exercised dominion over said original trust fund free from interference of any and all remaindermen under the last will and testament of her father, Archelaus Braswell, and with the knowledge, aid, assistance, consent and approval of said remaindermen, her children and grandchild, with the exception of Helen Joyner, . . . incompetent . . ."

"12. That the total sum of said Trust Fund to be accounted for by the estate of Alice Lee Joyner is $17,391.80."

"13. That the interest of each remainderman, subject to the life estate of Alice Lee Joyner, at the date of said fund, under said special proceedings in Pitt County, North Carolina, was the sum of $2,896.96, and that each, including Archie Braswell Joyner, Jr., as representative of his deceased father, Archie Braswell Joyner, is now entitled to the same from said fund subject to the charges, if any, against the interest of each remainderman, as may hereafter appear."

"16. That Emily Joyner Thigpen is indebted to said Trust Fund and the Estate of Alice Lee Joyner in the sum of $3,000 with interest . . . as appears from two notes, one dated January 30, 1923, in the sum of $500.00 . . ., and the other dated April 30, 1923, in the sum of $2,-500.00 . . ., and that these sums are to be considered a part of the Trust Fund herein referred to and the Estate of Alice Lee Joyner, and charged against the distributive share and interest of the said Emily Joyner Thigpen in and to said Trust Fund and the Estate of Alice Lee Joyner."

"17. . . . Andrew Joyner, Jr. is indebted to said Trust Fund and the Estate of Alice Lee Joyner in the sum of $1663.42 with interest . . ., and this sum shall become a part of said Trust Fund and the Estate of Alice Lee Joyner and charged against the distributive share and interest of Andrew Joyner, Jr., in and to the Trust Fund herein referred to and the Estate of Alice Lee Joyner."

"18. That Mary Lee Joyner Daughtridge is indebted to said Trust Fund and Estate of Alice Lee Joyner in the sum of $2700.00 with interest . . ., and this sum shall become a part of the Trust Fund and Estate of Alice Lee Joyner and shall be charged against the distributive share and interest of the said Mary Lee Joyner Daughtridge in and to said Trust Fund and the Estate of Alice Lee Joyner."

"19. That the sum of $5,000, purchase price of the real property known as the Leftwich Street property, deed to which is recorded in the name of Alice Lee Joyner in book 280 at page 115, office of the Register of Deeds of Guilford County, were funds belonging to the trust fund herein referred to."

"21. That the Government bonds made payable to Alice Lee Joyner or Emily J. Thigpen in an amount of $2,000, Alice Lee Joyner or Muriel J. Barrett in an amount of $2,000, and Alice Lee Joyner or Connie Thigpen Linde in an amount of $1,000, became the individual property of the said Emily J. Thigpen, Muriel J. Barrett and Connie Thigpen Linde, respectively, upon the date of death of Alice Lee Joyner on November 18, 1948."

"22. That the sum of $3,000, initial purchase price of stock in the Security Life & Trust Company, now totaling 312 shares, was funds belonging to the Trust Fund herein referred to."

"23. That the remaining parts and portions of the Trust Fund amounting to $17,381.80 were invested in whole or in part in other stocks set out in plaintiff's Inventory and evidence."

### CONCLUSIONS OF LAW.

"1. That the Administrator *c.t.a., d.b.n.*, will have discharged the obligations of Alice Lee Joyner in full toward her children and grandchildren

by dividing between them in equal shares the trust fund of $17,381.80 or the sum of $2,896.96 each."

"3. That the remaindermen *sui juris* acquiesced in the manner of investing such funds which include all remaindermen other than Helen Joyner, incompetent, are estopped to plead and prove wrongful, fraudulent conversion or commingling of funds by the said Alice Lee Joyner, Trustee, and that Helen Joyner, Incompetent, has suffered no loss and her interest has at all times been adequately protected for that said estate is and has been at all times solvent and can pay the *corpus* of said trust fund as originally intended under the Last Will and Testament of Archelaus Braswell."

The judgment directs, among other things, that the plaintiff administrator proceed as follows:

"5. . . . to deliver, assign and transfer to . . . Muriel J. Barrett all stock of decedent in the Security Life & Trust Company, comprising 312 shares, subject, however, to a charge against said stock in the sum of $3,000 for the benefit of the Trust Fund set out in this cause, in accordance with Item THIRD of the last will and testament of Alice Lee Joyner."

"14. To pay to each party herein, including Archie B. Joyner, Jr., as representative of his deceased father, Archie B. Joyner, the sum of $2,896.96 as the distributive share and interest of each of said parties in and to the Trust Fund herein referred to, subject, however, to any charge that may have been directed to be made in this judgment against each of said distributive shares and interests."

From the judgment entered, the defendants (except Muriel J. Barrett) appealed, assigning errors.

*John M. King for defendant appellants Mary Lee J. Daughtridge and husband, W. M. Daughtridge.*

*Andrew Joyner, Jr., and Henry C. Bourne for defendant appellants Andrew Joyner, Jr., and wife, Pearle A. Joyner.*

*S. L. Arrington for defendant appellant Edith Helen Joyner.*

*Smith, Sapp, Moore & Smith and Stephen Millikin for defendant appellants Archie B. Joyner, Jr., and wife, Alisia G. Joyner.*

*Leggett & Fountain for plaintiff, appellee.*

*Bunn & Bunn for defendant appellee Muriel J. Barrett.*

JOHNSON, J.   It is a well-established general principle of equity that property impressed with a trust may be followed through all changes in its state and form, so long as such property or its proceeds or its products are capable of identification.   *Edwards v. Culberson,* 111 N.C. 342, 16 S.E. 233; *Erickson v. Starling,* 233 N.C. 539, 64 S.E. 2d 832; 54 Am. Jur., Trusts, Sec. 248; 65 C.J., p. 967 *et seq.*

Mr. Pomeroy amplifies the rule this way: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, . . . or under any other similar circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." Pomeroy's Eq. Jur., Fifth Edition, Vol. 4, Sec. 1053. See also *Edwards v. Culberson, supra;* Am. Jur., Trusts, Sec. 245; Annotations: 43 A.L.R. 1415, p. 1418; 47 A.L.R. 371; 48 A.L.R. 1269.

This rule, known as "the rule of trust pursuit," is grounded on the principle that even though the form and physical character of the property be changed, nevertheless the property ownership continues and may be asserted by the beneficial owner. Therefore, trust pursuit rests in no sense on the principle of a debt due or owing, nor on the theory of damages or compensation for the loss of property. *Cheshire v. Cheshire,* 37 N.C. 569; *Younce v. McBride,* 68 N.C. 532; *Cooper v. Landis,* 75 N.C. 526; 54 Am. Jur., Trusts, Sec. 248.

But it is a cardinal rule of trust pursuit that the proceeds or the product of the initial property must be traced and identified through any and all intermediate transfers into the property sought to be reached; otherwise the beneficiary has only the rights and remedies of a general creditor to claim damages as for conversion or as for money had and received. *Bank v. Bank,* 115 N.C. 226, 20 S.E. 370; 54 Am. Jur., Trusts, Sec. 249; 65 C.J., p. 965 *et seq.* However, trust pursuit does not fail where substantial identification of the trust property or of the proceeds or product from a conversion thereof, is made. 54 Am. Jur., Trusts, Sec. 249. See also *Bank v. Waggoner,* 185 N.C. 297, 117 S.E. 6. And under application of the rule of trust pursuit, the trust follows and embraces not only the property or its proceeds or products, but ordinarily it also includes. any profit or increase in the value of such proceeds or products over the original trust property. *Erickson v. Starling, supra* (233 N.C. 539); *Rouse v. Rouse,* 167 N.C. 208, bot. p. 211, 83 S.E. 305; 54 Am. Jur., Trusts, Sec. 251. It is well settled that a court of equity will not permit a fiduciary to make a profit out of funds committed to his custody. *Williams v. Hooks,* 199 N.C. 489, p. 492, 154 S.E. 828; *Motley v. Motley,* 42 N.C. 211. See also *Irwin v. Harris,* 41 N.C. 215; *Bohle v. Hasselbroch,* 64 N. J. Eq. 334, 51 A. 508, 61 L.R.A. 323; *Holmes v. Gilman,* 138 N.Y. 369, 34 N.E. 205, 20 L.R.A. 566.

In *Bohle v. Hasselbroch, supra,* a trustee (mother of ultimate bene-
ficiaries and herself a life beneficiary of the trust), in disregard of the
testator's directions, used trust funds in her hands, together with her own
funds, to buy real estate, and took the title in her own name. The amount
of trust funds so used could not be precisely ascertained, but it exceeded
one-half of the price paid at the time of purchase. *Held,* that the *cestuis
que trustent* were entitled in equity to elect whether they would claim a
charge upon the real estate for the amount of trust funds so invested, or
would claim the real estate itself, as owners, subject to a charge for the
trustee's own money so used. The Court went on to say: ". . . that, in
endeavoring to ascertain how much was trust money and how much was
the trustee's own, every reasonable intendment should be made against the
trustee, through whose fault the truth had become obscure."

It is true, as a general rule, that the mere tracing of trust property
or funds into the general estate of a trustee is not a sufficient identification
of the trust property or funds, within the rule of trust pursuit, to pre-
serve the trust *res,* and where such commingling is made to appear, the
beneficiary ordinarily stands merely in the position of a general creditor
of the trustee or of his estate. *Roebuck v. Surety Co.,* 200 N.C. 196, 156
S.E. 531; *Corporation Commission v. Trust Co.,* 193 N.C. 696, 138 S.E.
22; 54 Am. Jur., Trusts, Sec. 259.

However, where it is made to appear that the trustee had no individual
property of appreciable substance susceptible of being commingled, or
which was commingled with the trust property or funds, in either event
we apprehend the true rule to be that equity will impress the trust char-
acter upon the entire mass and treat it as trust property or funds except
in so far as the trustee may be able to distinguish what is his. *Bohle v.
Hasselbroch, supra; Bank v. Waggoner, supra* (185 N.C. 297). See also
54 Am. Jur., Trusts, Sections 256 and 260.

The foregoing rules operate in harmony with the principles which
govern the respective rights of the life beneficiary of a trust and the
rights of the ultimate beneficiary thereof, under which increases in the
value of real estate and of investment securities in the possession of the
trustee as a general rule are treated as *corpus* increments and go to the
ultimate beneficiary, as do profits made by purchase and sale of such
property. *Gibbons v. Mahon,* 136 U.S. 549, 34 L. Ed. 525, 10 S. Ct.
1057; *Holcombe v. Ginn,* 296 Mass. 415, 6 N.E. 2d 351, 108 A.L.R. 1134;
*Hornsby v. Hornsby,* 185 Ky. 847, 216 S.W. 88; *Boardman v. Mansfield,*
79 Conn. 634, 66 A. 169; *Bains v. Globe Bank & Tr. Co.,* 136 Ky. 332,
124 S.W. 343; *Long v. Rike,* 50 Fed. 2d 124, 81 A.L.R. 521; *First Nat.
Bank v. Mulholland,* 123 Miss. 13, 85 So. 111, 13 A.L.R. 1000; 54 Am.
Jur., Life Estates, Remainders, etc., Sections 333, 335, 336, and 340;

Annotations: 13 A.L.R. 1004; 56 A.L.R. 1315; 81 A.L.R. 542.  See also American Law Inst. Restatement, Trusts, Vol. 1, Sections 233, 236.

When we come to apply the foregoing principles to the case at hand, it would seem that decision lies in a narrow compass.

First we examine the findings and conclusions of the court below bearing on the question of estoppel.  As to this, we conclude that the findings of fact are insufficient to support the legal conclusion and adjudication that the heirs at law and next of kin of Alice Lee Joyner are estopped to assert their rights in the trust fund.  The fact that the beneficiaries of the trust acquiesced in permitting the Trustee, their mother, to invest and reinvest the trust funds as she did, without sanction or approval of the court, does not support the inference or conclusion that they are estopped to assert their rights under the rule of trust pursuit.  It nowhere appears on this record that anyone has been misled to his hurt by reliance on the conduct of these beneficiaries, as is required in estoppel.  *Hawkins v. Finance Co., ante,* 174, p. 177, 77 S.E. 2d 669.

Next it is noted that Alice Lee Joyner owned the house and lot on West Gaston Street in Greensboro before the trust fund came into existence.  She owned this property at the time of her death.  All parties concede that it belongs to her individual estate.  Hence we eliminate it from further consideration.

This leaves in controversy (1) the Leftwich Street property in Greensboro, (2) the corporate stocks, (3) the bank deposits, (4) the notes and evidences of debt shown in the plaintiff's inventory, and (5) the $5,000 in U. S. Government bonds.

It is noted that under findings of fact Nos. 19, 22, and 23, the court below found these crucial facts: "19."  That the Leftwich Street property in Greensboro was purchased with "funds belonging to the trust fund"; "22." That the "$3,000, initial purchase price of stock in Security Life & Trust Company, now totalling 312 shares, was funds belonging to the trust fund"; and "23. That the remaining . . . portions of the trust fund, amounting to $17,381.80, were invested in whole or in part in other stocks set out in the plaintiff's inventory and evidence."  It thus appears that under these findings all the property in controversy derives from the trust fund, except the bank deposits, the notes and evidences of debt, and the U. S. Government bonds; and as to these three items or groups of items, it appears that the court's findings are not conclusive one way or the other.  On the basis of the facts as found, the court below should have concluded that the Leftwich Street property in Greensboro and all the corporate stocks, including the shares of stock in Security Life & Trust Company, belong to the trust fund.

The recitals in finding of fact No. 6 that Alice Lee Joyner "was entitled to the . . . increment" derived from the investment of the trust funds

and that such "increment is and does constitute a part of the individual estate of . . . Alice Lee Joyner, and passes under her last will and testament," are not findings of fact at all. They are erroneous conclusions of law to be disregarded.

The case seems to have been tried on a misapplication of the pertinent principles of law. Where this occurs, the usual practice is to remand the cause for a hearing *de novo*. *Credit Corp. v. Saunders,* 235 N.C. 369, p. 373, 70 S.E. 2d 176; *Coley v. Dalrymple,* 225 N.C. 67, 33 S.E. 2d 477.

It is so ordered here.

Error and remanded.