**UNITED STATES of America, Plaintiff,**

v.

**Richard E. TUGWELL, Defendant.**

**No. C–84–435–G.**

United States District Court,
M.D. North Carolina,
Durham Division.

Nov. 21, 1984.

Richard L. Robertson, Asst. U.S. Atty., Greensboro, N.C., for plaintiff.

Richard M. Hutson, II, Durham, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on plaintiff's motion for summary judgment and defendant's motion for summary judgment. The court is of the opinion that defendant's motion should be granted and plaintiff's motion should be denied.

### Background

On or about February 22, 1983, defendant Richard E. Tugwell purchased a grain combine from Thurgood M. Bradshaw of Efland, North Carolina. Mr. Bradshaw represented at the time of the sale that the combine was in good working order and that it could be used, with some adjustments, for either combining corn or other grains. Mr. Bradshaw also represented to the purchaser, defendant Tugwell, that Bradshaw had good title to the combine and was free to convey the same to the purchaser. Mr. Tugwell had no knowledge at the time of the purchase of any out-

standing security interest held by plaintiff or any other person in the said combine.

In late April 1983, Farmers Home Administration (FHA) informed Tugwell of its security interest in the said combine. In its notice to defendant, plaintiff maintained that the FHA had rights to the combine and that defendant could possibly be obligated to pay to plaintiff the value of the combine at the time it was purchased by defendant.

Defendant admitted his purchase and possession of the combine and has repeatedly tendered the combine to the plaintiff.

### Discussion

Plaintiff alleges that defendant wrongfully converted the combine by purchasing it from Mr. Bradshaw when Mr. Bradshaw was not authorized to sell it. Defendant asserts that there was no wrongful conversion and further that defendant would have a perfected security interest in the proceeds from the sale of the combine. The court agrees with the latter assertion.

A person who receives property by virtue of a sale from someone who is not entitled to sell the property may be held liable for conversion. The Restatement (Second) of Torts § 299 (1965) states:

> **§ 229. Conversion by Receiving Possession in Consummation of Transaction**
>
> One who receives possession of a chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel.

Although this statement of the law is correct, its application in this case is diminished due to plaintiff's perfected security interest in the combine.

Plaintiff and Bradshaw entered into a security agreement on May 13, 1982 which covered all crops, farm equipment, and livestock described therein, including the combine at issue in this case. Plaintiff had two previously filed financing statements dated January 30, 1980 and February 10, 1981 which served to perfect this security agreement. These financing statements were filed at the office of the Register of Deeds, Orange County, North Carolina. The court holds that because the security interest in the combine was duly perfected, plaintiff's security interest continues in the proceeds of that sale.

North Carolina General Statutes § 25-9-306 provides in pertinent part:

> (1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "non-cash proceeds."
>
> (2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreements or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
>
> (3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless
>
> (a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

**488**

(b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) the security interest in the proceeds is perfected before the expiration of the 10-day period. Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this article for original collateral of the same type.

By virtue of Subsection 3(b) of this statute, the plaintiff's rights are adequately protected, in that the financing statement filed with the Orange County Register of Deeds covers the original collateral and the proceeds derived therefrom. This includes identifiable cash proceeds. The North Carolina Court of Appeals has ruled on the issue of identifiable cash proceeds:

> While we have found no statutory definition of "identifiable proceeds" as that term is used in G.S. § 25-9-306(2), we also find no express limitation on the right of a secured party to trace proceeds subject to his security interest into a bank account of the debtor. This lack of limitation is not without significance. The U.C.C. provides that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity ... shall supplement its provisions." G.S. § 25-1-103. One such principle, which by analogy has application to the present case, is the doctrine of trust pursuit under which a cestui que trust is enabled to follow the trust funds through changes in their state and form in the hands of the trustee. *Trust Co. v. Barrett*, 238 N.C. 579, 78 S.E.2d 730 (1953); *see* 7 Strong, N.C. Index 2d, Trusts, § 21. From application of this doctrine in cases throughout this country there has evolved the general rule that the act of a trustee in mingling trust funds in a mixed bank account will not destroy their identity so as to prevent their reclamation. *See* Annot., 102 A.L.R. 372 (1936) (Supplementing annotations in 26 A.L.R. 3 (1923); 35 A.L.R. 747 (1925); and 55 A.L.R. 1275 (1928); D.

Dobbs, Handbook on the Law of Remedies, § 5.16 at 427–28 (1973)....

*Michigan Nat. Bank v. Flowers Mobile Homes*, 26 N.C.App. 690, 694, 217 S.E.2d 108, 111 (1975).

The court is of the opinion that although the combine was technically converted by defendant, to allow plaintiff to recover on a conversion theory would severely undermine the purpose and rationale of the Uniform Commercial Code. Plaintiff's rights remain protected, in that plaintiff may act on its perfected security interest in the proceeds. The record does not indicate why defendant did not check the office of the Orange County Register of Deeds to determine if any prior security agreement existed.

The court will enter an Order simultaneously herewith dismissing this action.